# GRIFFIN *v.* UNITED STATES

No. 90–6352.   Argued October 7, 1991—Decided December 3, 1991

SCALIA, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, STEVENS, O'CONNOR, KENNEDY, and SOUTER, JJ., joined.  BLACKMUN, J., filed an opinion concurring in the judgment, *post,*

p. 60. THOMAS, J., took no part in the consideration or decision of the case.

*Michael G. Logan* argued the cause and filed briefs for petitioner.

*Deputy Solicitor General Bryson* argued the cause for the United States. With him on the brief were *Solicitor General Starr, Assistant Attorney General Mueller,* and *Jeffrey P. Minear.*

JUSTICE SCALIA delivered the opinion of the Court.

This case presents the question whether, in a federal prosecution, a general guilty verdict on a multiple-object conspiracy charge must be set aside if the evidence is inadequate to support conviction as to one of the objects.

## I

A federal grand jury returned a 23-count indictment against petitioner Diane Griffin and others. Count 20, the only count in which Griffin was named, charged her, Alex Beverly, and Betty McNulty with conspiring to defraud an agency of the Federal Government in violation of 18 U. S. C. § 371, which reads, in pertinent part, as follows:

> "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be [guilty of a crime]."

The unlawful conspiracy was alleged to have had two objects: (1) impairing the efforts of the Internal Revenue Service (IRS) to ascertain income taxes; and (2) impairing the efforts of the Drug Enforcement Administration (DEA) to ascertain forfeitable assets.

The evidence introduced at trial implicated Beverly and McNulty in both conspiratorial objects, and petitioner in the

IRS object. However, because testimony anticipated by the Government from one of its witnesses did not materialize, the evidence did not connect petitioner to the DEA object. On that basis, petitioner moved for a severance, but her motion was denied. At the close of trial, she proposed instructions to the effect that she could be convicted only if the jury found she was aware of the IRS object of the conspiracy. She also proposed special interrogatories asking the jury to identify the object or objects of the conspiracy of which she had knowledge. Both requests were denied. The court instructed the jury in a manner that would permit it to return a guilty verdict against petitioner on Count 20 if it found her to have participated in *either one* of the two objects of the conspiracy. The jury returned a general verdict of guilty on Count 20 against Beverly, McNulty, and petitioner.

The Court of Appeals for the Seventh Circuit upheld petitioner's conviction, rejecting the argument that the general verdict could not stand because it left in doubt whether the jury had convicted her of conspiring to defraud the IRS, for which there was sufficient proof, or of conspiring to defraud the DEA, for which (as the Government concedes) there was not. *United States* v. *Beverly,* 913 F. 2d 337 (1990). We granted certiorari, 498 U. S. 1082 (1991).

The question presented for review, as set forth in the petition, is simply whether a general verdict of guilty under circumstances such as existed here "is reversible." The body of the petition, however, sets forth the Due Process Clause of the Fifth Amendment and the jury trial provision of the Sixth Amendment as bases for the relief requested. Only the former has been discussed (and that briefly) in the written and oral argument before us. For that reason, and also because the alleged defect here is not that a jury determination was denied but rather that a jury determination was permitted, we find it unnecessary to say anything more about the Sixth Amendment. We address below the Due

Process Clause and also the various case precedents relied upon by petitioner.

## II

The rule of criminal procedure applied by the Seventh Circuit here is not an innovation. It was settled law in England before the Declaration of Independence, and in this country long afterwards, that a general jury verdict was valid so long as it was legally supportable on one of the submitted grounds—even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action. As Wharton wrote in 1889:

> "For years it was the prevailing practice in England and this country, where there was a general verdict of guilty on an indictment containing several counts, some bad and some good, to pass judgment on the counts that were good, on the presumption that it was to them that the verdict of the jury attached, and upon the withdrawal by the prosecution of the bad counts. . . . [I]n the United States, with but few exceptions, the courts have united in sustaining general judgments on an indictment in which there are several counts stating cognate offences, irrespective of the question whether one of these counts is bad." F. Wharton, Criminal Pleading and Practice § 771, pp. 533–536 (9th ed. 1889) (footnotes omitted).

And as this Court has observed:

> "In criminal cases, the general rule, as stated by Lord Mansfield before the Declaration of Independence, is 'that if there is any one count to support the verdict, it shall stand good, notwithstanding all the rest are bad.' And it is settled law in this court, and in this country generally, that in any criminal case a general verdict and judgment on an indictment or information containing several counts cannot be reversed on error, if any one of the counts is good and warrants the judgment, because,

in the absence of anything in the record to show the contrary, the presumption of law is that the court awarded sentence on the good count only." *Claassen* v. *United States*, 142 U. S. 140, 146 (1891) (quoting *Peake* v. *Oldham*, 1 Cowper 275, 276, 98 Eng. Rep. 1083 (K. B. 1775)) (other citations omitted).

See also *Snyder* v. *United States*, 112 U. S. 216, 217 (1884); *Clifton* v. *United States*, 4 How. 242, 250 (1846); 1 J. Bishop, Criminal Procedure § 1015, p. 631 (2d ed. 1872).

This common-law rule applied in a variety of contexts. It validated general verdicts returned on multicount indictments where some of the counts were legally defective ("bad"), see, *e. g., Clifton, supra,* at 250; *State* v. *Shelledy,* 8 Iowa 477, 511 (1859); *State* v. *Burke,* 38 Me. 574, 575–576 (1854); *Commonwealth* v. *Holmes,* 17 Mass. 336, 337 (1821), and general verdicts returned on multicount indictments where some of the counts were unsupported by the evidence, see, *e. g., State* v. *Long,* 52 N. C. 24, 26 (1859); *State* v. *Bugbee,* 22 Vt. 32, 35 (1849); 1 Bishop, *supra,* § 1014, p. 630. It also applied to the analogous situation at issue here: a general jury verdict under a *single* count charging the commission of an offense by two or more means. For example, in reviewing a count charging defendants with composing, printing, and publishing a libel, Lord Ellenborough stated:

"It is enough to prove publication. If an indictment charges that the defendant did and caused to be done a particular act, it is enough to prove either. The distinction runs through the whole criminal law, and it is invariably enough to prove so much of the indictment as shows that the defendant has committed a substantive crime therein specified." *King* v. *Hunt,* 2 Camp. 583, 584–585, 170 Eng. Rep. 1260 (N. P. 1811).

The latter application of the rule made it a regular practice for prosecutors to charge conjunctively, in one count, the various means of committing a statutory offense, in order to avoid the pitfalls of duplicitous pleading.

> "A statute often makes punishable the doing of one thing *or* another, . . . sometimes thus specifying a considerable number of things. Then, by proper and ordinary construction, a person who in one transaction does all, violates the statute but once, and incurs only one penalty. Yet he violates it equally by doing one of the things. Therefore the indictment on such a statute may allege, in a single count, that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction *and* where the statute has 'or,' and it will not be double, and it will be established at the trial by proof of any one of them." 1 J. Bishop, New Criminal Procedure § 436, pp. 355–356 (2d ed. 1913) (footnotes omitted).

See, *e. g., Crain* v. *United States*, 162 U. S. 625, 636 (1896); *Sanford* v. *State*, 8 Ala. App. 245, 247, 62 So. 317, 318 (1913); *State* v. *Bresee*, 137 Iowa 673, 681, 114 N. W. 45, 48 (1907); *Morganstern* v. *Commonwealth*, 94 Va. 787, 790, 26 S. E. 402, 403 (1896). See also *Schad* v. *Arizona*, 501 U. S. 624, 630–631 (1991); Fed. Rule Crim. Proc. 7(c)(1) (authorizing a single count to allege that an offense was committed "by one or more specified means").

The historical practice, therefore, fails to support petitioner's claim under the Due Process Clause of the Constitution. See *Murray's Lessee* v. *Hoboken Land & Improvement Co.*, 18 How. 272, 276–277 (1856). Petitioner argues, however, that—whether as a matter of due process or by virtue of our supervisory power over federal courts—a result contrary to the earlier practice has been prescribed by our decision in *Yates* v. *United States*, 354 U. S. 298 (1957). *Yates* involved a single-count federal indictment charging a conspiracy "(1)

to advocate and teach the duty and necessity of overthrowing the Government of the United States by force and violence, and (2) to organize, as the Communist Party of the United States, a society of persons who so advocate and teach." *Id.*, at 300. The first of these objects (the "advocacy" charge) violated §2(a)(1) of the Smith Act of 1940 (subsequently repealed and substantially reenacted as 18 U. S. C. §2385), and the second of them (the "organizing" charge) violated §2(a)(3). We found that the "organizing" object was insufficient in law, since the statutory term referred to initial formation, and the Communist Party had been "organized" in that sense at a time beyond the period of the applicable statute of limitations. 354 U. S., at 304–311. We then rejected the Government's argument that the convictions could nonetheless stand on the basis of the "advocacy" object. Our analysis made no mention of the Due Process Clause but consisted in its entirety of the following:

> "In these circumstances we think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected. *Stromberg* v. *California,* 283 U. S. 359, 367–368; *Williams* v. *North Carolina,* 317 U. S. 287, 291–292; *Cramer* v. *United States,* 325 U. S. 1, 36, n. 45." *Id.,* at 312.

None of the three authorities cited for that expansive proposition in fact establishes it. The first of them, *Stromberg* v. *California,* 283 U. S. 359 (1931), is the fountainhead of decisions departing from the common law with respect to the point at issue here. That case, however—which does not explicitly invoke the Due Process Clause—does not sanction as broad a departure as the dictum in *Yates* expresses, or indeed even the somewhat narrower departure that the holding in *Yates* adopts. The defendant in *Stromberg* was

charged in one count of violating a California statute prohibiting the display of a red flag in a public place for any one of three purposes: (a) as a symbol of opposition to organized government; (b) as an invitation to anarchistic action; or (c) as an aid to seditious propaganda. *Id.*, at 361. The jury was instructed that it could convict if it found the defendant guilty of violating any one purpose of the statute. *Id.*, at 363–364. A conviction in the form of a general verdict followed. The California appellate court upheld the conviction on the ground that, even though it doubted the constitutionality of criminalizing the first of the three purposes, the statute (and conviction) could be saved if that provision was severed from the statute. We rejected that:

> "As there were three purposes set forth in the statute, and the jury were instructed that their verdict might be given with respect to any one of them, independently considered, it is impossible to say under which clause of the statute the conviction was obtained. If any one of these clauses, which the state court has held to be separable, was invalid, it cannot be determined upon this record that the appellant was not convicted under that clause. . . . It follows that instead of its being permissible to hold, with the state court, that the verdict could be sustained if any one of the clauses of the statute were found to be valid, the necessary conclusion from the manner in which the case was sent to the jury is that, if any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld." *Id.*, at 368.

This language, and the holding of *Stromberg*, do not necessarily stand for anything more than the principle that, where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground.

The same principle explains the other two cases relied on by *Yates*. In *Williams* v. *North Carolina*, 317 U. S. 287 (1942), the defendant was convicted of bigamous cohabitation after the jury had been instructed that it could disregard the defendants' Nevada divorce decrees on the ground either that North Carolina did not recognize decrees based on substituted service or that the decrees were procured by fraud. *Id.*, at 290–291. The former of these grounds, we found, violated the Full Faith and Credit Clause. We continued:

> "[T]he verdict of the jury for all we know may have been rendered on that [unconstitutional] ground alone, since it did not specify the basis on which it rested. . . . No reason has been suggested why the rule of the *Stromberg* case is inapplicable here. Nor has any reason been advanced why the rule of the *Stromberg* case is not both appropriate and necessary for the protection of rights of the accused. To say that a general verdict of guilty should be upheld though we cannot know that it did not rest on the invalid constitutional ground on which the case was submitted to the jury, would be to countenance a procedure which would cause a serious impairment of constitutional rights." *Id.*, at 292.

The third case cited by *Yates*, *Cramer* v. *United States*, 325 U. S. 1 (1945), was our first opportunity to interpret the provision of Article III, §3, which requires, for conviction of treason against the United States, that there be "two Witnesses to the same overt Act." The prosecution had submitted proof of three overt acts to the jury, which had returned a general verdict of guilty. After a comprehensive analysis of the overt-act requirement, *id.*, at 8–35, we found that two of the acts proffered by the prosecution did not satisfy it, *id.*, at 36–44, and accordingly reversed the conviction. "Since it is not possible," we said, "to identify the grounds on which Cramer was convicted, the verdict must be set aside if any

of the separable acts submitted was insufficient." *Id.*, at 36, n. 45.[1]

A host of our decisions, both before and after *Yates*, has applied what *Williams* called "the rule of the *Stromberg* case" to general-verdict convictions that may have rested on an unconstitutional ground. See, *e. g.*, *Bachellar* v. *Maryland*, 397 U. S. 564, 570–571 (1970); *Leary* v. *United States*, 395 U. S. 6, 31–32 (1969); *Street* v. *New York*, 394 U. S. 576, 585–588 (1969); *Terminiello* v. *Chicago*, 337 U. S. 1, 5 (1949); *Thomas* v. *Collins*, 323 U. S. 516, 529 (1945). Cf. *Zant* v. *Stephens*, 462 U. S. 862, 880–884 (1983) (rejecting contention that *Stromberg* required a death sentence to be set aside if one of several statutory aggravating circumstances underlying the jury verdict was unconstitutionally vague). *Yates*, however, was the first and only case of ours to apply *Stromberg* to a general verdict in which one of the possible bases of conviction did not violate any provision of the Constitution but was simply legally inadequate (because of a statutory time bar). As we have described, that was an unexplained

---

[1] At the outset of its discussion of the two overt acts, the *Cramer* Court said: "At the present stage of the case we need not weigh their sufficiency as a matter of pleading. Whatever the averments might have permitted the Government to prove, we now consider their adequacy on the proof as made." 325 U. S., at 37. Petitioner suggests this means that *Cramer* was a sufficiency-of-the-evidence case—a point relevant to our later analysis, see *infra*, at 58–59. That suggestion is mistaken. As is apparent from the Court's full discussion, "adequacy on the proof as made" meant not whether the evidence sufficed to enable an alleged fact to be found, but rather whether the facts adduced at trial sufficed *in law* to constitute overt acts of treason. Thus the Court could say: "It is not relevant to our issue to appraise weight or credibility of the evidence apart from determining its constitutional sufficiency." 325 U. S., at 43. The Court of Appeals' opinion in *Cramer* makes even clearer that legal as opposed to evidentiary sufficiency was at issue; it specifically distinguishes the case from those in which multiple overt acts sufficient in law are submitted to the jury and the conviction is upheld as long as the evidence suffices to show one of them. See *United States* v. *Cramer*, 137 F. 2d 888, 893–894 (CA2 1943).

extension, explicitly invoking neither the Due Process Clause (which is an unlikely basis) nor our supervisory powers over the procedures employed in a federal prosecution.

Our continued adherence to the holding of *Yates* is not at issue in this case. What petitioner seeks is an extension of its holding—an expansion of its expansion of *Stromberg*—to a context in which we have never applied it before. Petitioner cites no case, and we are aware of none, in which we have set aside a general verdict because one of the possible bases of conviction was neither unconstitutional as in *Stromberg*, nor even illegal as in *Yates*, but merely unsupported by sufficient evidence. If such invalidation on evidentiary grounds were appropriate, it is hard to see how it could be limited to those alternative bases of conviction that constitute separate legal grounds; surely the underlying principle would apply equally, for example, to an indictment charging murder by shooting or drowning, where the evidence of drowning proves inadequate. See *Schad* v. *Arizona*, 501 U. S., at 630–631. But petitioner's requested extension is not merely unprecedented and extreme; it also contradicts another case, postdating *Yates*, that in our view must govern here.

*Turner* v. *United States*, 396 U. S. 398 (1970), involved a claim that the evidence was insufficient to support a general guilty verdict under a one-count indictment charging the defendant with knowingly purchasing, possessing, dispensing, and distributing heroin not in or from the original stamped package, in violation of 26 U. S. C. § 4704(a) (1964 ed.). We held that the conviction would have to be sustained if there was sufficient evidence of distribution *alone*. We set forth as the prevailing rule: "[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as Turner's indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts

charged." *Id.*, at 420.   Cf. *United States* v. *Miller*, 471 U. S. 130, 136 (1985).

Although petitioner does not ask us to overrule *Turner*, neither does she give us any adequate basis for distinguishing it.   She claims that we have not yet applied the rule of that case to multiple-act conspiracies.   That is questionable. See *United States* v. *Socony-Vacuum Oil Co.*, 310 U. S. 150, 250 (1940).   But whether we have yet done so or not, the controlling point is that a logical and consistent application of *Turner* demands that proof of alternative facts in conspiracy cases be treated the same as proof of alternative facts in other contexts.   Imagine the not unlikely case of a prosecution for defrauding an insurer through two means and for conspiring to defraud the insurer through the same two means; and imagine a failure of proof with respect to one of the means.   Petitioner's proposal would produce the strange result of voiding a conviction on the conspiracy while sustaining a conviction on the substantive offense.   We agree with the vast majority of Federal Courts of Appeals, which have made no exception to the *Turner* rule for multiple-object and multiple-overt-act conspiracies.   See, *e. g.*, *United States* v. *Bilzerian*, 926 F. 2d 1285, 1302 (CA2 1991), cert. denied, *post*, p. 813; *United States* v. *Beverly*, 913 F. 2d 337, 362–365 (CA7 1990) (case below); *United States* v. *Johnson*, 713 F. 2d 633, 645–646, and n. 15 (CA11 1983), cert. denied *sub nom. Wilkins* v. *United States*, 465 U. S. 1081 (1984); *United States* v. *Wedelstedt*, 589 F. 2d 339, 341–342 (CA8 1978), cert. denied, 442 U. S. 916 (1979); *United States* v. *James*, 528 F. 2d 999, 1014 (CA5), cert. denied *sub nom. Austin* v. *United States*, 429 U. S. 959 (1976); *Moss* v. *United States*, 132 F. 2d 875, 877–878 (CA6 1943).[2]

---

[2] The only Court of Appeals we are aware of that adheres to the contrary rule is the Third Circuit, albeit without distinguishing, or even acknowledging the existence of, *Turner*.   See *United States* v. *Tarnopol*, 561 F. 2d 466, 474–475 (1977).   Many cases can be found, some of which are cited

Petitioner also seeks to distinguish *Turner* on the basis that it applies only where one can be *sure* that the jury did not use the inadequately supported ground as the basis of conviction. That assurance exists, petitioner claims, when the prosecution presents *no evidence whatever* to support the insufficient theory; if the prosecution offers *some*, but insufficient, evidence on the point, as it did in this case, then the *Yates* "impossible to tell" rationale controls. This novel theory posits two different degrees of failure of proof—a failure that is *sufficiently* insufficient, to which *Turner* would apply, and one that is *insufficiently* insufficient, to which *Yates* would apply. Besides producing an odd system in which the greater failure of proof is rewarded, the rule seems to us full of practical difficulty, bereft of support in *Turner*, and without foundation in the common-law presumption upon which *Turner* is based.

Finally, petitioner asserts that the distinction between legal error *(Yates)* and insufficiency of proof *(Turner)* is illusory, since judgments that are not supported by the requisite minimum of proof are invalid *as a matter of law*—and indeed, in the criminal law field at least, are *constitutionally*

---

by petitioner, that invalidate general conspiracy verdicts on the basis of legal deficiency of some of the objects rather than inadequacy of proof; these are of course irrelevant. See, *e. g., United States* v. *Irwin,* 654 F. 2d 671, 680 (CA10 1981), cert. denied, 455 U. S. 1016 (1982); *United States* v. *Head,* 641 F. 2d 174, 178–179 (CA4 1981), cert. denied, 462 U. S. 1132 (1983); *United States* v. *Kavazanjian,* 623 F. 2d 730, 739–740 (CA1 1980); *United States* v. *Carman,* 577 F. 2d 556, 567–568 (CA9 1978); *United States* v. *Baranski,* 484 F. 2d 556, 560–561 (CA7 1973); *Van Liew* v. *United States,* 321 F. 2d 664, 672 (CA5 1963). Some other cases cited by petitioner do not involve a conspiracy charge at all, *e. g., United States* v. *Natelli,* 527 F. 2d 311, 324–325 (CA2 1975), cert. denied, 425 U. S. 934 (1976), or apply their ruling to both substantive and conspiracy charges, *e. g., United States* v. *Garcia,* 907 F. 2d 380, 381 (CA2 1990)—which means that they flatly contradict *Turner* and offer no support for the distinction that petitioner suggests. Still others have been distinguished (or effectively overruled) by later cases within the Circuit, see, *?. g., United States* v. *Berardi,* 675 F. 2d 894, 902 (CA7 1982).

*required* to be set aside. See *Jackson* v. *Virginia*, 443 U. S. 307, 319 (1979). Insufficiency of proof, in other words, *is* legal error. This represents a purely semantical dispute. In one sense "legal error" includes inadequacy of evidence— namely, when the phrase is used as a term of art to designate those mistakes that it is the business of judges (in jury cases) and of appellate courts to identify and correct. In this sense "legal error" occurs when a jury, properly instructed as to the law, convicts on the basis of evidence that no reasonable person could regard as sufficient. But in another sense—a more natural and less artful sense—the term "legal error" means a mistake about the law, as opposed to a mistake concerning the weight or the factual import of the evidence. The answer to petitioner's objection is simply that we are using "legal error" in the latter sense.

That surely establishes a clear line that will separate *Turner* from *Yates*, and it happens to be a line that makes good sense. Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence, see *Duncan* v. *Louisiana*, 391 U. S. 145, 157 (1968). As the Seventh Circuit has put it:

> "It is one thing to negate a verdict that, while supported by evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance— remote, it seems to us—that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the

evidence was sufficient." *United States* v. *Townsend,* 924 F. 2d 1385, 1414 (1991).

\* \* \*

What we have said today does not mean that a district court cannot, in its discretion, give an instruction of the sort petitioner requested here, eliminating from the jury's consideration an alternative basis of liability that does not have adequate evidentiary support. Indeed, if the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration. The refusal to do so, however, does not provide an independent basis for reversing an otherwise valid conviction. The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE THOMAS took no part in the consideration or decision of this case.

JUSTICE BLACKMUN, concurring in the judgment.

I agree with the Court that petitioner has not made out a violation of the Due Process Clause, although I do not follow the Court on its self-guided tour of the common law. See *ante,* at 49–52. It is enough, I think, to observe that petitioner has not presented any sustained constitutional argument whatsoever.

I agree further with the Court's conclusion that *Yates* v. *United States,* 354 U. S. 298 (1957), does not require reversal in this case, and that petitioner has not sufficiently distinguished *Turner* v. *United States,* 396 U. S. 398 (1970). See *ante,* at 56–59. I would emphasize more strongly than does the Court, however, the danger of jury confusion that was inherent in this multiple-defendant, 23-count indictment and the resulting 5- to 6-week trial.

The Court rightly observes that "it would generally be preferable" for the trial court to remove unsupported theories from the jury's consideration. See *ante*, at 60. I would also note that the Government had two other means of avoiding the possibility, however remote, that petitioner was convicted on a theory for which there was insufficient evidence: The Government either could have charged the two objectives in separate counts, or agreed to petitioner's request for special interrogatories. The Court wisely rejects, albeit silently, the Government's argument that these practices, but not the complex and voluminous proof, would likely have confused the jury. I would go further than the Court and commend these techniques to the Government for use in complex conspiracy prosecutions.