

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-29-2005

# USA v. Jones

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3997

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Jones" (2005). 2005 Decisions. Paper 1426.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1426

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-3997

UNITED STATES OF AMERICA

v.

WILLIAM JONES,
                                    Appellant

APPEAL FROM THE UNITED STATES DISTRICT  COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Crim. No. 00-cr-00660-1
District Judge:  The Honorable Harvey Bartle, III

Submitted Under Third Circuit LAR 34.1(a)
July 13, 2004
Resubmitted:  January 12, 2005

Before: RENDELL, BARRY, and FISHER, <u>Circuit Judges</u>

(Opinion Filed:  March 29, 2005)

OPINION

BARRY, <u>Circuit Judge</u>

**I.  BACKGROUND**

William Jones was indicted on October 26, 2000 by a grand jury sitting in the

Eastern District of Pennsylvania for crimes committed in connection with the robberies of two jewelry stores: the Talisman Jewelry Store in Reading, PA on April 14, 1999, and the R&Q Jewelry Store in Camden, NJ on August 19, 1999. The indictment named five co-conspirators – Damon Harris, Michael Krug, Darryl Lamont Franklin, Gary Collins, and William Miranda – and alleged the existence of other, unnamed co-conspirators. The evidence at trial – namely the testimony of the victims and of certain of Jones's co-conspirators – showed that Jones was the mastermind behind both robberies: he chose both jewelry stores, chose the participants, mapped out the plan, provided the guns used, acted as a lookout and getaway car driver, and fenced the stolen goods afterwards.

Jones planned the Talisman robbery with Harris, Franklin, and Krug, all of whom participated in the robbery. Jones provided guns to Harris and Franklin to use during the robbery. He drove Franklin, and Krug drove Harris. Inside, Franklin pistol-whipped, handcuffed, and threw the store owner's son down the stairs into the basement. The owner then entered the store, struggled with Franklin over control of the gun, pulled his own gun, and shot Franklin, who stumbled into the street and into Jones's car, which fled the scene. They made off with jewelry, cash, and an AK47 rifle. Jones dropped Franklin at a hospital, where Franklin was apprehended by police. Harris and Krug drove to Philadelphia, where they were to meet Jones. On the way, they called Miranda to tell him that they had pulled off the robbery, as did Jones. Jones also told Collins about the robbery and gave him some of the stolen jewelry to be fenced. Harris, Krug, Miranda and

2

Collins testified against Jones at trial.

Jones also planned the R&Q robbery. On the morning of the robbery, he met with Harris and Miranda, picked up Collins, supplied Miranda and Collins with guns, and purchased handcuffs and duct tape to be used during the robbery. On the way to R&Q, he solicited an acquaintance to drive the getaway car in which Harris rode; Miranda and Collins rode with Jones. Harris, Miranda, and Collins entered and robbed R&Q. When they realized that store employees returning from lunch observed the robbery, they attempted to flee, but had jammed the door. They broke a window and fled. Harris drove off with his driver, and Jones abandoned Miranda and Collins, who were apprehended.

Jones was charged with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count One); Hobbs Act robbery of the Talisman Jewelry Store, in violation of 18 U.S.C. §§ 1951 and 2 (Count Two); unlawfully using, carrying, and brandishing a firearm in connection with the Talisman robbery, in violation of 18 U.S.C. §§ 921(c)(1) and 2 (Count Three); unlawfully using, carrying, and brandishing a firearm on the date of the R&Q robbery and in connection with the conspiracy charged in Count One, in violation of 18 U.S.C. §§ 921(c)(1) and 2 (Counts Four and Five); and possession of a firearm by a convicted felon on the dates of the Talisman and R&Q robberies, in violation of 18 U.S.C. § 922(g)(1) (Count Six and Seven").[1] (69.1a-69.11a) The

---

[1]Harris and Krug were charged with Jones and pled guilty. Franklin was tried separately in the Eastern District of Pennsylvania and convicted. Collins and Miranda were charged separately in the District of New Jersey; both pled guilty.

3

indictment did not charge Jones with robbery of the R&Q Jewelry Store because venue would have been improper: the robbery occurred in New Jersey.

Jones, represented by appointed counsel, was tried before the Hon. Bruce W. Kauffman from July 16 through July 24, 2001, and was convicted on all counts. Jones's trial counsel moved for a judgment of acquittal under FED. R. CRIM. P. 29(c), or, alternatively, for a new trial under FED. R. CRIM. P. 33. In addition, Jones himself moved for new counsel. Judge Kauffman granted Jones's request, and appointed the Defender Association of Philadelphia. Jones's new counsel supplemented the post-trial motions, arguing that there was an impermissible variance between the indictment, which charged a single conspiracy, and the evidence presented at trial, which showed two separate conspiracies. Counsel also argued that the Court should have instructed the jury on the difference between single and multiple conspiracies, and that the in-court identification of Jones by Kim Freed – who had not identified him two years earlier from a photo array, and only identified him when she walked into the court room – was unduly suggestive, unreliable, and, therefore, violated Jones's due process rights. Finally, counsel renewed Jones's previously withdrawn motion that Judge Kauffman recuse himself.

Judge Kauffman granted the recusal motion, and the case was reassigned to the Hon. Harvey Bartle III. On July 25, 2003, Judge Bartle denied Jones's post-trial motions, finding that there was sufficient evidence for the jury to find Jones guilty of a single conspiracy and that Freed's in-court identification was not unduly suggestive and was

reliable.

On September 26, 2003, Judge Bartle sentenced Jones to 521 months imprisonment: 137 months on Counts One (conspiracy), Two (robbery), and Six and Seven (gun possession); three years on Count Three (use of firearm); and 25 years on Count Five (use of firearm, merged with Count Four), all sentences to run consecutively.[2] Jones now appeals. The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over this appeal under 28 U.S.C. § 1291.

## II. DISCUSSION

### A. Prejudicial Variance and Sufficiency of the Evidence

Jones argues that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he was guilty of a single conspiracy to commit the multiple robberies at issue. Instead, he claims, the evidence shows, at most, a separate conspiracy to commit each robbery. Because Count One charges a single conspiracy, Jones argues that there was a variance between the indictment and the evidence at trial. As counsel put it during argument on the post-trial motions: "What we're left with, then, is the fact that they were both jewelry stores, and some of the same people were involved. . . . they're remote in time, they're remote in place. So all we have is some overlap in the people." (1399a-1400a.) That variance, Jones argues, means that the prosecution failed to present sufficient evidence to support his conviction and prejudiced him because it resulted in the

---

[2]The sentence also included five years of supervised release, $40,755.99 in restitution, and a $600 special assessment.

5

admission of evidence relating to the R&Q robbery that would have been inadmissible and highly prejudicial in a trial concerning just the Talisman robbery, and vice versa. We disagree.

"We review the sufficiency of the evidence 'in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Pritchard, 346 F.3d 469, 470 n.1 (3d Cir. 2003) (quoting United States v. Hodge, 321 F.3d 429, 439 (3d Cir. 2003) (citing United States v. Smith, 294 F.3d 473, 478 (3d Cir. 2002)). In our review, we are to "credit all reasonable inferences that support the verdict[ ]." United States v. Perez, 280 F.3d 318, 342 (3d Cir.), cert. denied 537 U.S. 859 (2002).

Generally speaking, the essential elements of a charge of conspiracy are well established: "'(1) a shared "unity of purpose," (2) an intent to achieve a common goal, and (3) an agreement to work together toward that goal.'" Id. (quoting United States v. Mastrangelo, 172 F.3d 288, 292 (3d Cir. 1999)). These elements may be proven by circumstantial evidence. Id. Moreover,

> [W]e exercise plenary review over "whether there was sufficient evidence
> from which the jury could have concluded that the government proved the
> single conspiracy alleged in the indictment." United States v. Kelly, 892
> F.2d 255, 258 (3d Cir. 1989). In reviewing the sufficiency of the evidence
> after conviction, we must view the evidence in the light most favorable to
> the verdict. Id. Where a single conspiracy is alleged in an indictment, and
> the evidence at trial merely proves the existence of several distinct
> conspiracies, there is an impermissible variance. Id. On the other hand, "a
> finding of a master conspiracy with subschemes does not constitute a
> finding of multiple, unrelated conspiracies and, therefore, would not create

6

an impermissible variance." Id. (quoting United States v. Smith, 789 F.2d 196, 200 (3d Cir.1986)). In Kelly, we adopted a three-step inquiry to distinguish a single conspiracy from a series of separate, unrelated conspiracies:

> First, we examine whether there was a common goal among the conspirators. Second, we look at the nature of the scheme to determine whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators. Third, we examine the extent to which the participants overlap in the various dealings.

Id. at 259 (citations and quotation marks omitted).

United States v. Lee, 359 F.3d 194, 207 (3d Cir. 2004) (finding sufficient evidence from which the jury could have found a reasonable basis to conclude that what the defendant alleged were four separate conspiracies was in fact part of the same overarching conspiracy charged in the indictment).

Even if we find an impermissible variance, we must also find prejudice to the defendant before upsetting the jury verdict: "'A defendant alleging a variance between a single conspiracy charged in an indictment and the proof presented at trial must demonstrate, first, that there was such a variance and, second, that the variance prejudiced one of his substantial rights.'" Perez, 280 F.3d at 345 (quoting United States v. Quintero, 38 F.3d 1317, 1337 (3d Cir. 1994) (citing Kelly, 892 F.2d at 258)); see also United States v. Camiel, 689 F.2d 31, 35 (3d Cir. 1982).

Applying the first Kelly inquiry, a reasonable jury could surely have inferred from the evidence at trial that at least Jones, Harris, and Miranda had a common goal to rob jewelry stores. Jones planned and participated in both the Talisman and R&Q robberies.

7

Harris participated in both, and asked Krug to be involved in the Talisman robbery. Miranda intended to participate in the first, but did not only because he was at work; he did participate in the R&Q.

As for the second inquiry, clearly Jones sought to bring to pass the continuous result of robbing jewelry stores. Harris's participation in both the Talisman and R&Q robberies suggests his agreement with Jones to do so. The same can be said, to a lesser extent, for Miranda's involvement, and even Collins's. Finally, the third Kelly inquiry is easily answered: both Jones's and Harris's direct participation in both robberies is sufficient to show that their dealings in both overlap.

There is, to be sure, no direct evidence showing an overarching agreement encompassing multiple robberies, but there rarely is. As we recently stated, "[m]ultiple conspiracies are 'separate networks operating independently of each other.'" Perez, 280 F.3d at 346 (quoting United States v. Barr, 963 F.2d 641, 648 (3d Cir. 1992). Consequently, "the relatedness of the activities of the co-conspirators in support of the overall illegal scheme can defeat a claim of multiple conspiracies." Id. There is a relatedness to these two robberies that clearly supports the inference of an agreement – even if unspoken. More specifically, the evidence here of "the similarity of method and result, and the partial overlap of participants" is "probative of a unitary conspiracy." United States v. DiPasquale, 740 F.2d 1282, 1290 (3d Cir. 1984). There was no impermissible variance.

8

**B.     Response to Jury Question**

Jones argues, next, that Judge Kauffman's response to a note from the jury during deliberations deprived him of his due process rights.  The jury asked the Court: "Judge, Page 11, first sentence states Talisman's and R&O (sic).  Can we separate or must defendant be guilty of both?"  (1348a.)  After colloquy with counsel, Judge Kauffman gave the jury the following answer: "The answer is, yes, you can separate.  He must – he need not be guilty of both."  (1368a.)

Jones relies on general language from the Supreme Court: "When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." Bollenbach v. United States, 326 U.S. 607, 612-13 (1946).  He argues that the note reflected the jury's confusion, and that the Court should have instructed the jury that it should acquit him if the evidence proved multiple or separate conspiracies, instead of the single conspiracy charged.

We exercise plenary review in determining whether the jury instructions stated the proper legal standard, but otherwise review the refusal to give a particular instruction or the wording of instructions for abuse of discretion.  United States v. Khorozian, 333 F.3d 498, 507-08 (3d Cir.), cert. denied 124 S.Ct. 450 (2003) (citing United States v. Coyle, 63 F.3d 1239, 1245 (3d Cir. 1995)).  Because the gist of Jones's argument is that the wording of Judge Kauffman's response was confusing or lacking, and not that it recited the

9

improper legal standard,[3] we will review for an abuse of discretion.

First,"'when we consider jury instructions we consider the totality of the instructions and not a particular sentence or paragraph in isolation.'" Id. (quoting Coyle, 63 F.3d at 1245). Judge Kauffman's preliminary instructions correctly set forth the basic elements of conspiracy. He began his final instructions by noting that "[t]he indictment charges in Count One the conspiracy to interfere with commerce by robbery of Talisman's Jewelry Store and R&O (sic) Jewelry Store." Later, when explaining, in detail, the essential elements of Count One, he properly noted that "the defendant need not have joined in all of the conspiracy's unlawful objectives . . . . even a single act may be sufficient to draw the defendant within the ambit of the conspiracy." (1327a.) He also properly instructed that it "is not required that all of the overt acts alleged in the indictment be proven. Similarly, you need not find that the defendant in this case committed the overt act." (1331a.)

Each of these instructions properly set forth the legal standard for the jury, and mitigates any problem created by the response to the note. The jury was apparently asking, in the note, whether it had to conclude, before convicting Jones on Count One, that he was guilty of robbing the R&Q store. Judge Kauffman's answer to that question was correct.

But, even if the note is interpreted as asking whether, before convicting Jones on

---

[3]See, e.g., 1404a (Jones's counsel stating that, "Now, arguably, that's not an incorrect statement, to the extent that he didn't need to be guilty of both substantive robberies").

Count One, the jury had to conclude that he conspired to commit both robberies, Judge Kauffman did not abuse his discretion in responding as he did. Had the jury concluded that Jones had not conspired to commit the R&Q robbery, it could still have convicted him on Count One. A jury may convict a defendant on a multiple-object conspiracy count as long as there is sufficient evidence to support any one of the objects of the conspiracy. Griffin v. United States, 502 U.S. 46, 56-57 (1991); see also United States v. Navarro, 145 F.3d 580, 590-91 (3d Cir. 1998) ("it is clear that when a jury returns a general guilty verdict on a multiple-object conspiracy count, the conviction will stand over Fifth Amendment due process objections so long as there is sufficient evidence to support any one of the objects of the conspiracy"). The robbing of each jewelry store was a distinct object of the conspiracy, and the jury was entitled to convict Jones on Count One based on its conclusion that he conspired to rob the Talisman store, but not the R&Q store, without violating his due process rights.

## C.    Multiple Conspiracy Instruction

Jones argues, next, that his trial counsel was ineffective for failing to request a multiple conspiracy instruction, and that the Court committed plain error by failing to give such an instruction sua sponte.[4]

"It has long been the practice of this court to defer the issue of ineffectiveness of trial counsel to a collateral attack." United States v. Thornton, 327 F.3d 268, 271 (3d Cir.

---

[4]Trial counsel did not request this instruction during trial, nor did he object to Judge Kauffman's instructions when given.

11

2003). Even though we may address the claim of ineffective assistance of counsel on direct appeal when the record is sufficient to allow determination of the issue, it is preferable that such claims be considered on collateral review, even when the government concedes that trial counsel was deficient. See id. (citing United States v. Massaro, 538 U.S. 500 (2003)). We see no reason to make an exception here. In any event, as our foregoing discussion should indicate, we see no plain error.

**D.    In-Court Identification**

Jones also argues that his counsel was ineffective in failing to object to the in-court identification of him by Kim Freed and that the District Court plainly erred by admitting that identification which, he argues, occurred under unduly suggestive circumstances.

Freed was in her car outside the Talisman store when it was robbed – she heard a gunshot, saw an injured man getting into a brown car double parked next to hers, and observed the driver. She described the driver as a stocky, dark-colored black male. In October 1999, six months after the robbery, she was shown a photo array that included a 1997 photograph of Jones, but was unable to identify him. Nevertheless, the prosecution intended to have her testify that she saw Franklin, and that she saw part of Jones's license plate. The prosecution did not intend to ask Freed to identify Jones during her testimony.

When Freed entered the courtroom, however, she recognized Jones. The prosecution asked for a sidebar, and explained that now it intended to have Freed identify Jones. Jones's trial counsel did not object. Thereafter, Freed explained on direct that she

recognized Jones "as soon as I saw him . . . it all . . . flashed back to me. I just definitely – I know the structure of his face. I knew it was him." (481a.) On cross, Freed admitted that Jones was the only African American man on the defense side of the courtroom. She explained that her ability to recognize him in the courtroom when she was unable to do so from the photo array was because the quality of his photo was not good, and because he was sitting next to her in the courtroom. Also, we note, counsel conceded that Jones's weight fluctuated greatly – he was very heavy on the day of the Talisman robbery, he was much thinner in the 1997 picture Freed saw in October 1999, and he was very heavy again in the courtroom.

As discussed above, the ineffectiveness of counsel claim will not be considered here. We review the District Court's decision to allow the in-court identification for plain error. See FED. R. CRIM. P. 52(b); United States v. Plotts, 359 F.3d 247, 248-49 (3d Cir. 2003).

The law governing out-of-court identification procedures is well established. See, e.g., United States v. Mathis, 264 F.3d 321, 329-30 (3d Cir. 2001) (citing Neil v. Biggers, 409 U.S. 188 (1972)). The government argues that Freed's identification was in court, and therefore not governed by these cases. We agree with Jones, however, that Freed's encounter with him immediately before she testified should be evaluated against the out-of-court identification standard.

Under that standard, "'convictions based on eye-witness identification . . . will be

set aside only if the photographic identification was so impermissibly suggestive as to give rise to a very substantial likelihood of . . . misidentification.'" Id. at 330 (quoting Biggers, 409 U.S. at196-97. "[T]hat likelihood of misidentification should be measured by a totality of circumstances including: the witness's initial opportunity to view the suspect at the crime scene and degree of attention at that time, the witness's level of certainty in the disputed identification, the length of time between initial viewing and disputed identification, and the accuracy of any intervening description of the suspect occurring between those two events." Id. (citing Biggers, 409 U.S. at 199-200). "A 'suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability,' for reliability is the 'linchpin in determining the admissibility of identification testimony.'" United States v. Emanuele, 51 F.3d 1123, 1128 (3d Cir. 1995) (quoting Manson v. Brathwaite, 432 U.S. 98, 106 (1977)).

The indicia of reliability of the identification, which included Freed's proximity to Jones on the day of the robbery, Jones's fluctuating weight, and the spontaneity of Freed informing the prosecution that she could identify Jones, compel the conclusion that it was not error, much less plain error, not to have disallowed the identification sua sponte.

E.     **Sentencing Issues**

Finally, Jones challenges his sentence under United States v. Booker, 543 U.S. __, 125 S.Ct. 738 (2005). Having determined that the sentencing issues Jones raises are best

14

determined by the District Court in the first instance, we will vacate the sentence and remand for resentencing in accordance with <u>Booker</u>.

### III.  CONCLUSION

The judgment of conviction will be affirmed.  The sentence will be vacated and we will remand for resentencing.