PARKER, Senior District Judge,
concurring:
I agree with Judge Tymkovich’s thorough analysis of the cumulative nature of the email evidence that was not made available to the jury. I concur in his conclusion that the three emails undisclosed to the jury were not sufficiently material to the Defendant’s entrapment defense to undermine confidence in the jury’s verdict of guilty on Count 3. This affirms the conclusion of the trial judge who personally observed the presentation to the jury of evidence of more than one hundred communications between undercover agent Keith Heavilin and Defendant Ford. I write in concurrence to emphasize Judge Tymkovich’s fifth reason for concluding that the evidence presented to the jury convincingly demonstrated that the Defendant was predisposed to possess the illegal, fully automatic Olympic Arms AR-15 machine gun (“AR-15”) which was the subject of Count 3.
As Judge Tymkovich noted, Count 3 charged Defendant with violating 18 U.S.C. § 922(o) by knowingly transferring or knowingly possessing a machine gun.
At trial, the government presented to the jury evidence that Defendant possessed the AR-15 as far back as 2003 or earlier, long before Defendant met Agent Heavilin. The evidence is undisputed that Heavilin and Defendant first met on February 7, 2004.
The government’s witness James Hee gave the following testimony before the jury. Hee met the Defendant in 1999 in a firefighter training academy and they developed a very strong friendship. Hee stayed in Defendant’s home on visits during 2001 and 2002 and Hee invited Defendant to stay at Hee’s home. In 2003, Hee saw a number of weapons, including the AR-15, while visiting Defendant at his home. Sometime later during 2003, Hee accompanied Defendant to Defendant’s cabin where Defendant fired the AR-15 “a little bit” and then allowed Hee to “take a few shots with it ...” See R. Vol. XI at 17. The AR-15 fired in a fully automatic fashion.
Hee felt very close to the Defendant and considered Defendant almost a blood brother because they both were firemen. In 2003, Hee grew concerned because Defendant’s behavior and demeanor changed after September 11 and Defendant became “paranoid” and worried about the country’s security. See R. Vol. X at 225; Vol. XI at 9. Defendant gave Hee a list of military equipment with “nomenclature” that “regular people” should not “have access to” causing Hee to be suspicious of Defendant’s activities. See R. Vol. X at 226-227. Hee’s worries heightened when Defendant wanted to find out “if they were going to declare marshal law and disarm us ...” See R. Vol. X at 228. The list of military equipment that Defendant had given Hee made Hee nervous enough to take action, but because Defendant was Hee’s good friend and Hee did not want to get Defendant in trouble, instead of con- *990 taeting the local police Hee reported Defendant’s list to another firefighter who was affiliated with law enforcement through arson investigation services.
Eventually the Federal Bureau of Investigation (“FBI”) contacted Hee who told the FBI about Defendant’s weapons, which were placed on a list dated February 5, 2004 that was shown to the jury (Government’s Exhibit 64). The list included the AR-15. Significantly, the list bears a date of February 5, 2004 — two days before undercover agent Heavilin first contacted Defendant on February 7, 2004. This documentary evidence corroborates Hee’s testimony that Defendant had possessed the AR-15 before Defendant first met Heavilin who, therefore, could not have entrapped Defendant by inducing Defendant to gain possession of the AR-15.
Further corroboration of Mr. Hee’s testimony was provided by two law enforcement witnesses. William Gallegos, a detective in the Intelligence Bureau of the Denver Police Department, interviewed the Defendant. During the interview, Defendant said that the AR-15 was “a weapon he had had for some time ...” See R. Vol. XI at 146. In addition, Defendant admitted to Detective Gallegos that Defendant had fired the AR-15 “at some point in time.” See R. Vol. XI at 147.
Brian Schmitt, a special agent with the FBI, also interviewed the Defendant. Agent Schmitt testified the Defendant told him “he had had this weapon for a long time. It was in two pieces. If the two pieces were put together, it would fire fully automatic, and that he had shot this weapon on several occasions.” See R. Vol. XI at 189. Agent Schmitt further testified that Defendant “made a comment to the extent that he knew it was wrong to have it, he knew it was wrong to sell it, but he did it anyway.” See R. Vol. XI at 190.
In jury instruction number 17, the trial judge carefully instructed the jury that Defendant was charged in Count 3 with a violation of 18 U.S.C. § 922(o), which makes it a crime to knowingly transfer or knowingly possess a machine gun; that the government must prove beyond a reasonable doubt the Defendant knowingly transferred or knowingly possessed the AR-15; and that Defendant knew the firearm he transferred or possessed was a machine gun. The judge then instructed the jury that if the government proved the essential elements beyond a reasonable doubt, the jury should find Defendant guilty of knowingly transferring or knowingly possessing a machine gun as charged in Count 3 but that if any essential element was not proven beyond a reasonable doubt, then the jury should find defendant not guilty of knowingly transferring or knowingly possessing a machine gun as charged in Count 3.
In a separate verdict form pertaining to Count 3, the trial judge repeated the alternative grounds for conviction:
“VERDICT FORM — COUNT 3
We, the jury, on our oaths, unanimously find defendant, STAN TARAN FORD, as to the crime of knowingly transferring or knowingly possessing a machine gun, as charged in Count 3 of the Indictment, the essential elements of which are set forth in Instruction No. 17:
Not Guilty
X Guilty”
(Emphasis supplied).
The Supreme Court of the United States, in a case where there were alternative statutory grounds for a guilty verdict, *991 unanimously[1] held that “a general jury verdict was valid so long as it was legally supportable on one of the submitted grounds — even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury’s action.” Griffin v. United States, 502 U.S. 46, 49, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991).
The Tenth Circuit has followed the rule in Griffin multiple times. See, e.g., United States v. Haber, 251 F.3d 881, 889 (10th Cir.2001) (stating that although jury unanimity issue was not properly preserved for appeal, it would nevertheless affirm a general verdict in which court instructed jury that it could find defendant guilty of mail fraud based upon either a scheme to defraud or a scheme to obtain money by false pretenses); United States v. Vaziri, 164 F.3d 556, 566 (10th Cir.1999) (upholding general verdict on one count of the indictment, which charged a multiple-object conspiracy involving LSD, methamphetamine, cocaine, and marijuana even though evidence did not support each object of conspiracy); United States v. Bell, 154 F.3d 1205, 1209 (10th Cir.1998) (upholding general verdict on count alleging conspiracy to distribute cocaine and crack cocaine even though evidence supported only distribution of crack cocaine); United States v. Linn, 31 F.3d 987 (10th Cir.1994) (upholding general verdict on count alleging conspiracy to commit arson, mail fraud, wire fraud, and money laundering even though evidence did not support all theories). Recently, in United States v. Vigil, 523 F.3d 1258 (10th Cir.2008), this Court affirmed a holding by the United States District Court for the District of New Mexico that expressly followed Griffin. See United States v. Vigil, 478 F.Supp.2d 1285, 1302 (D.N.M.2007) (Defendant convicted of attempted extortion either by wrongful use of actual or threatened fear, or under color of official right), aff'd on other grounds, 523 F.3d 1258 (10th Cir.2008). The jury had ample evidence from which it could have determined in regard to Count 3 that Defendant Ford possessed the AR-15 before he first met undercover agent Heavilin. In that circumstance, Defendant’s entrapment defense would have had no application to Defendant’s illegal possession of the AR-15; the jury could have convicted the Defendant under Count 3 on the ground of possession without even having to consider whether undercover agent Heavilin entrapped Defendant with respect to the sale of the AR-15. The jury’s verdict on Count 3 is therefore supportable on the ground of possession even if it were invalid with respect to the ground of transfer of the AR-15, although I believe the general jury verdict was valid as to either ground. This is a strong reason, in addition to the missing evidence being cumulative in nature, to have confidence in the jury’s verdict.

. Seven justices joined in the majority opinion authored by Justice Scalia; Justice Blackmun wrote a concurring opinion; Justice Thomas took no part in the decision.