**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES,<br><br>            Plaintiff - Appellee,<br><br>    v.<br><br>LORENZO GONZALEZ, AKA Grumpy,<br><br>            Defendant - Appellant. | No.  13-50348<br><br>D.C. No.  2:11-cr-00050-GAF-5<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted December 11, 2014
Pasadena, California

Before: WARDLAW and BERZON, Circuit Judges, and SMITH, District Judge.[**]

Lorenzo Gonzalez appeals his conviction and sentence following a jury trial

in which he was found guilty of racketeering conspiracy (Count One) and of two

counts of committing a violent crime in aid of a racketeering enterprise

---

  [*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

  [**]     The Honorable William E. Smith, Chief United States District Judge for the District of Rhode Island, sitting by designation.

("VICAR"): conspiracy to murder rival gang members (Count Two) and conspiracy to murder Edward Clark (Count Ten). In a concurrently filed opinion, we address Gonzalez's argument that the district court's instructions to the jury on Count Two violated his right to a unanimous jury verdict. *See United States v. Gonzalez*, __ F.3d __ (9th Cir. 2015). In this memorandum disposition, we address Gonzalez's remaining challenges to his conviction and sentence. We affirm in part, vacate in part, and remand for resentencing.

1. Gonzalez claims that there was insufficient evidence with respect to Count Ten and the overt-act element of Count Two. Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of the crimes charged in Counts Two and Ten beyond a reasonable doubt. *See United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc).

The evidence relating to the VICAR conspiracy to murder Clark charged in Count Ten was sufficient. After being informed by Jose Villasenor of a theft of property from Villasenor's garage, Gonzalez directed Alfredo Revelez to search

the neighborhood for the van driven by the suspected thief.[1] Gonzalez told

Revelez, "We need to get that motherfucker." Although he was hesitant to discuss

the details over the telephone, Gonzalez told Revelez that he would be well

compensated for his assistance. Later that day, Gonzalez pressured Villasenor for a

monetary figure: "Give me a number . . . . 'Cause it's gonna happen. It's gonna

happen ASAP . . . ." Gonzalez told Villasenor that he knew where the thief lived,

but that "those guys [are] not gonna do it for nothing . . . . [because] if they get

caught, you already know they're gonna bust them so, tell your brother to offer

them something good." A few days later, Villasenor informed Gonzalez that he

would pay $2,000. Two days later, Gonzalez informed Villasenor's brother that

"it's a go on that. I'm gonna meet with the homie tomorrow." Gonzalez then called

Revelez and told him "it's a go on that" and "[t]he sooner, the better." Gonzalez

asked Revelez whether he "already got somebody," and Revelez responded in the

affirmative. Viewing this evidence in the light most favorable to the Government, a

rational trier of fact could have found that Gonzalez intended and agreed to kill

Clark and that overt acts were committed in furtherance of this agreement. *See*

*People v. Von Villas*, 11 Cal. App. 4th 175, 244 (1992) ("[O]nce a punishable

---

[1] Although the wiretap evidence did not refer to Clark by name, it was clear that the gang suspected that the thief was Villasenor's brother-in-law. In addition to being Villasenor's brother-in-law, Clark generally matched the physical description of the thief referred to in the taped conversations.

agreement is formed, internal discussions and arrangements between coconspirators can easily constitute overt acts in furtherance of the conspiracy.").[2]

We reach the same conclusion with respect to the evidence on the overt-act element of Count Two. Frank Mariscal reported to Gonzalez that a man known as "Speedy," a member of the rival gang BMS or Big Macs, lived in 38th Street Gang territory. Gonzalez reported this information to Revelez, and, about two weeks later called him back and told him: "[T]he homies . . . they're-they're about to get that Big Mac [i.e. Speedy], fool. They-they already know how they want and everything. They posted, they're waiting for him right now, but they need a heat." Revelez told Gonzalez, "Tell him to come pick it up." Shortly thereafter, Gonzalez called Revelez to inform him that "they're already on the way." Minutes later, Revelez called Gonzalez to tell him that "[t]hem fools already came through." Gonzalez told Revelez, "I told them to return it to you as soon as they were done," and he warned Revelez to "[b]e on alert when they come and drop it off." A rational factfinder could have found on the basis of this evidence that an overt act was taken in further of a conspiracy to murder Speedy, a rival gang member. *See Von Villas*, 11 Cal. App. 4th at 244.

---

[2] The violent crime underlying the VICAR offenses charged in Counts Two and Ten was conspiracy to commit murder in violation of Cal. Penal Code §§ 182 and 187.

4

Additionally, on another occasion, Reinaldo Resendez called Gonzalez to tell him that BMS members were "kicking it" at a particular intersection in 38th Street Gang territory. When Gonzalez offered to "call some homies," Resendez informed him: "If they want something, the big one is here, you know what I mean? So they can do, so they can do something." Gonzalez responded: "Yeah, hell yeah! Fuck them Big Macs." Gonzalez then called Mario Jimenez, informed him of the situation, told him to "[g]et ahold of the homies," and related that Resendez "has something big . . . so that they could use it." After talking with Jimenez, Gonzalez called Resendez and told him that Jimenez was "down," that "he'll probably come through and see you," and that "[h]e knows exactly where [the Big Macs are] at." From this evidence, a rational factfinder could have found that an overt act was taken in furtherance of the agreement to kill the Big Macs Resendez saw at the intersection. *See Von Villas*, 11 Cal. App. 4th at 244.[3]

2. We find merit in Gonzalez's contention that the district court erred in applying a two-level enhancement for use of a minor in a crime pursuant to United States Sentencing Guidelines Manual § 3B1.4. A district court may apply this

---

[3] To be sure, the evidence with respect to some of the particular potential intended victims of the conspiracy to murder rival gang members that were discussed in the wiretap evidence may have been insufficient to support a finding of guilt for a conspiracy to murder those particular victims. However, contrary to Gonzalez's assertion, this circumstance does not warrant reversal of Gonzalez's conviction on Count Two. *See Griffin v. United States*, 502 U.S. 46, 49-51, 56-60 (1991).

sentencing enhancement "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense." U.S.S.G. § 3B1.4.[4] However, the enhancement may be imposed "only if a preponderance of the evidence demonstrates that the defendant 'acted affirmatively to involve the minor in the crime.'" *United States v. Flores*, 725 F.3d 1028, 1040 (9th Cir. 2013) (quoting *United States v. Jimenez*, 300 F.3d 1166, 1169 (9th Cir. 2002)).

In this case, the district court identified three reasons why it believed that an enhancement under § 3B1.4 was warranted: (1) Gonzalez "was involved in recruiting younger members"; (2) the testimony of fellow gang member Isaac Alvarez indicated that the 38th Street Gang used minors, including Alvarez, to commit crimes; and (3) the court knew, both from other gang cases and from sentencing other 38th Street Gang members, that it was "pretty common that juveniles are used" by gangs. None of these reasons withstand scrutiny.

At the outset, the district court's knowledge of the prevalence of the practice of gangs using juveniles and Alvarez's testimony that the 38th Street Gang used minors tells us nothing about whether Gonzalez "acted affirmatively to involve [a]

---

[4] The Guidelines provide that "'[u]sed or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." U.S.S.G. § 3B1.4 cmt. 1.

minor in the crime.'" *Flores*, 725 F.3d at 1040 (quoting *Jimenez*, 300 F.3d at 1169). Additionally, neither the district court nor the Government identified any evidence that showed that the "younger members" that Gonzalez recruited were minors. Finally, although Alvarez joined the gang and committed crimes before turning eighteen, neither the Government nor the district court pointed to any evidence that Gonzalez used or attempted to use Alvarez when he was still a minor. Alvarez was nineteen years old when he was arrested on January 22, 2010. Thus, he was not a minor in July 2009, when Gonzalez informed Alvarez where he could locate a gun. Although there is other evidence in the record where Gonzalez arguably encouraged Alvarez to commit crimes on behalf of the gang, it is unclear whether these events occurred when Alvarez was a minor.

Therefore, because the evidence "does not provide the necessary factual underpinning for imposing the enhancement," *Flores*, 725 F.3d at 1041, the district court abused its discretion in imposing it. This error affected the district court's Guidelines calculation, so we must vacate Gonzalez's sentence on all counts and remand for resentencing. *See id.* at 1042.[5]

---

[5] This conclusion renders consideration of Gonzalez's challenge to the substantive reasonableness of his sentence unnecessary. *See Flores*, 725 F.3d at 1042.

7

3. Finally, the Government concedes that the district court erred in sentencing Gonzalez in excess of the statutory maximum for Counts Two and Ten. The VICAR offenses charged in Counts Two and Ten are subject to a ten-year maximum prison sentence. *See* 18 U.S.C. § 1959(a)(5). The district court in this case sentenced Gonzalez to concurrent terms of 300 months' imprisonment on each count. This was error.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**