Opinion issued August 14, 2008









Opinion issued August 14,
2008

 

 

 



                                                

 

 

 

 

In The

Court
of Appeals

For The

First
District of Texas

 




 
 
 
 
 
 
 


 



NO.   01-07-00800-CR




 
 
 
 
 
 
 


 

 



RONALD ROBINSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 

 



On Appeal from the 209th District Court

Harris County, Texas

Trial Court Cause No. 1036165

 

 



O P I N I O N

 

A jury found Ronald Robinson guilty
of capital murder, and, the State not having sought the death penalty, the
trial court sentenced him to a term of life imprisonment without parole.  Tex. Penal Code Ann. § 19.03 (Vernon Supp. 2007).  Robinson appeals, contending that his conviction should be reversed
because (1) the court’s charge to the jury violated his constitutional right to
due process by erroneously instructing the jury that it could find him guilty
of capital murder based on conduct neither alleged in the indictment nor
statutorily defined as capital murder; (2) the trial court erred in admitting
hearsay testimony through three witnesses concerning statements made to them by
Robert Mason, the individual who shot the complainant; and (3) the trial court
erred in sentencing him under a statute that became effective after the date of
the offense and has only prospective application.  We reverse the judgment and
remand the cause for a new trial.

Background

During the 1980’s, Jimmy Sims worked
as a coach in a boxing gym in his spare time.  Robinson’s wife at the time,
Flor, met Sims when he began to coach her son, Ronnie.  Sims and Flor began an
extra-marital affair that lasted approximately six years.

By approximately 1990, both Robinson
and Sims’s wife, Jeneanne, had discovered the affair.  Jeneanne confronted Sims
about the affair, and Sims ended it.  Robinson reacted to the news by
threatening and stalking both Sims and his wife.  Robinson called the Simses’
residence and threatened that he would come and “take care of” Sims and get
“payback” for what Sims had done to his family.  Sometimes, Robinson called the
Simses and beat Flor during the phone call so that the Simses could hear her
screams.  Robinson wrote provocative letters to the Simses and signed them as
if they were from Flor.  The Simses also noticed that Robinson routinely spent
time parked outside the Simses’s house, particularly when Sims left for work. 
Once in early 1991, Jeneanne saw Robinson brandish a gun while he drove by the
house.  

By the summer of 1991, Robinson was
walking onto the Simses’ property and confronting the Simses face-to-face. 
Once, he entered the Simses’ garage with his teen-aged son Ronnie and four of
Ronnie’s friends.  With Sims inside the house recuperating from a work injury,
Jeneanne headed into the garage alone and told Robinson to leave.  Robinson
angrily responded that he and the boys were there to “find out what’s going on”
and “settle this.”  On another occasion, Jeneanne saw several teen-aged boys
behind her back fence firing pistols into the air.  Over the course of two
years, Robinson had threatened to kill Sims so many times and in so many ways
that Jeneanne lived in fear of Robinson, and Sims became resigned to what he
perceived as his fate, telling his wife that “he knew he was going to die.”  

On September 5, 1991, Jeneanne was
accompanying Sims outside as he left for work.  Noticing that he did not have
his pager with him, Sims asked Jeneanne to retrieve it from the house.  While
Jeneanne was inside, she heard what she first thought sounded like fireworks.  Quickly
realizing that she actually had heard gunshots, Jeneanne grabbed a pistol from
its place on top of the refrigerator and ran outside.  She saw two individuals,
wearing knit caps and with their faces covered by bandanas, still shooting at
Sims.  She lifted the pistol and screamed at them repeatedly to “stop it” and
“get out of there.”  Both individuals pointed their guns at her, then turned
and ran to the middle of the street.  Jeneanne ran toward them and pointed the
pistol at them again, and they stopped and raised their guns a second time, but
eventually turned and fled down the street. 

Sims died from his injuries.  After
his death, Robinson continued to park outside the Sims home from time to time. 
The police investigated the crime without immediate success, and the
investigation stalled.  In 2005, the police department retrieved the cold case
file and began to work on it again.  Detective Fikaris initially helped with
the renewed investigation and located a number of possible witnesses, including
Mason and his former girlfriend, Mason’s former friends, and Robinson’s son,
Ronnie.  

The renewed investigation led to
Robinson’s indictment, trial, and conviction.  Robinson timely filed this
appeal.




Discussion

Charge Error

Robinson contends that his conviction
should be reversed because the charge submitted to the jury violated his due
process rights by erroneously allowing the jury to find Robinson guilty of
capital murder based on conduct that was not alleged in the indictment and does
not satisfy any theory found in the capital murder statute.  See Tex. Penal Code Ann. § 19.03.  The
State does not defend the propriety of the charge, but asserts that any error
does not warrant reversal.   

To determine whether the jury charge
contains reversible error, we first decide whether error exists.  Middleton
v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).   If we conclude that
it does, we examine whether the error harmed the defendant.  Id.; see
Tex. Code Crim. Proc. Ann. art. 36.19
( “Whenever it appears by the record in any criminal action upon appeal that
any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been
disregarded, the judgment shall not be reversed unless the error appearing from
the record was calculated to injure the rights of defendant, or unless it
appears from the record that the defendant has not had a fair and impartial
trial.”).  

The trial court’s charge must fully instruct
the jury on the law applicable to the case and apply that law to the facts
adduced at trial.   Gray v. State, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004); see Tex. Code Crim.
Proc. Ann. art 36.14 (Vernon 2007).  Robinson’s challenge concerns
whether the conduct described in the charge constitutes capital murder, as the
jury was instructed.  The Penal Code defines the offense of capital murder as
murder plus one of the following enumerated circumstances:

(1)        
the person murders a peace officer
or fireman who is acting in the lawful discharge of an official duty and who
the person knows is a peace officer or fireman;

(2)        
the person intentionally commits
the murder in the course of committing or attempting to commit kidnapping,
burglary, robbery, aggravated sexual assault, arson, obstruction or
retaliation, or terroristic threat under Section 22.07(a)(1), (3), (4), (5), or
(6);

(3)        
the person commits the murder for
remuneration or the promise of remuneration or employs another to commit the
murder for remuneration or the promise of remuneration;

(4)        
the person commits the murder
while escaping or attempting to escape from a penal institution;

(5)        
the person, while incarcerated in
a penal institution, murders another:

(A)  who
is employed in the operation of the penal institution; or         

(B) with
the intent to establish, maintain, or participate in a combination or in the
profits of a combination;

(6)        
the
person:                                                              

(A)     while incarcerated for an offense under this section or Section
9.02, murders another; or

(B)     while serving a sentence of life imprisonment or a term of 99
years for an offense under Section 20.04, 22.021, or 29.03, murders another;

(7)        
the person murders more than one
person:                                 

(A)     during the same criminal transaction;
or                          

(B)     during different criminal transactions but the murders are
committed pursuant to the same scheme or course of  conduct;

(8)        
the person murders an individual
under six years of age; or      

(9)        
the person murders another person
in retaliation for or on account of the service or status of the other person
as a judge . . . .

Tex. Penal
Code Ann. § 19.03(a). 
The indictment against Robinson charged that he “unlawfully, intentionally and
knowingly cause[d] the death of JIMMY SIMS, . . . by
employing ROBERT MASON for REMUNERATION AND THE PROMISE OF REMUNERATION, to
wit: MONEY AND A FIREARM, to SHOOT THE COMPLAINANT WITH A DEADLY WEAPON,
NAMELY, A FIREARM.”  See Tex.
Penal Code Ann. § 19.03(a)(3).  The charge instructed the jury as
follows:

Now, if you find from the evidence beyond a reasonable
doubt that in Harris County, Texas, on or about the 5th day of September 1991,
the defendant, Ronald Robinson, did then and there unlawfully, intentionally or
knowingly cause the death of Jimmy Sims, by employing Robert Mason for
remuneration or the promise of remuneration, to-wit: money and/or a firearm, to
shoot Jimmy Sims with a deadly weapon, namely, a firearm; or

 

If you find from the evidence beyond a reasonable
doubt that the defendant, Ronald Robinson and Robert Mason entered into an
agreement to commit the felony offense of aggravated assault of Jimmy Sims, and
pursuant to that agreement, if any, they did carry out their conspiracy and
that in Harris County, Texas, on or about the 5th day of September 1991, while
in the course of committing such aggravated assault of Jimmy Sims, Robert Mason
intentionally caused the death of Jimmy Sims by shooting Jimmy Sims with a
deadly weapon, namely, a firearm, and the murder of Jimmy Sims was committed in
furtherance of the conspiracy and was an offense that the defendant should have
anticipated as a result of carrying out the conspiracy, then you will find the
defendant guilty of capital murder, as charged in the indictment.

 

Robinson’s specific complaint
concerns the second paragraph, which, he observes, instructs the jury that it
could find him guilty of capital murder for conduct that does not constitute
the offense of capital murder—that is, none of the nine statutory circumstances
that raise a murder to a capital murder are included.  We agree.  The second paragraph
submits the issue of murder under a conspiracy to commit felony murder theory,
but does not require the jury to find the applicable aggravating factor—that
Robinson employed Mason for remuneration or the promise of remuneration as part
of the conspiracy.  This portion of the court’s charge neither tracks the
indictment nor satisfies the definition of capital murder contained in the
statute.  See Tex. Penal Code Ann.
§§ 9.02, 19.03 (Vernon 2003 & Supp. 2007).  The conduct described in
the second paragraph, if found beyond a reasonable doubt, would support a
conviction of Robinson only as a co-conspirator to commit felony murder, not to
capital murder.  

Robinson contends that the charge
error violated his federal due process rights because it denied him notice and
the opportunity to prepare a defense.  See Jackson v. Virginia, 443 U.S. 307, 314, 99 S. Ct. 2781, 2786 (1979) (“It is axiomatic that a conviction upon a charge not
made or upon a charge not tried constitutes a denial of due process.”), quoted
in Gollihar v. State, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001).  In
considering whether harm results from a general verdict of guilt rendered on a
jury submission setting forth two alternative grounds, one valid and the other
invalid, we first observe that “where a provision of the Constitution forbids
conviction on a particular ground, the constitutional guarantee is violated by
a general verdict that may have rested on that ground.” Griffin v. U.S.,
502 U.S. 46, 53, 112 S. Ct. 466, 471 (1991); see also Green v. State,
233 S.W.3d 72, 80 & n.7 (Tex. App.—Houston [14th Dist.] 2007, pet. ref’d)
(finding egregious harm and reversing and remanding for new trial because jury
verdict was based on charge that contained several valid legal theories and one
invalid theory); Guevara v. State, 191 S.W.3d 203, 208 (Tex. App.—San
Antonio 2005, pet. ref’d) (holding that charge that instructed jury it could
find defendant guilty of murder under one of two possible theories, one of
which was legally inadequate party charge, required reversal of conviction;
court could not presume jury based verdict on legally sufficient ground).  For
this reason, the federal Constitution requires that we set aside a verdict “in
cases where the verdict is [constitutionally] supportable on one ground, but
not on another, and it is impossible to tell which ground the jury selected.”  Yates
v. United States, 354 U.S. 298, 312, 77 S. Ct. 1064, 1073 (1957), overruled
on other grounds in Burks v. United States, 437 U.S. 1, 98 S. Ct. 2141 (1978).  The Supreme Court has explained the rationale for this rule:

Jurors are not generally equipped to determine whether
a particular theory of conviction submitted to them is contrary to law—whether,
for example, the action in question is protected by the Constitution, is time
barred, or fails to come within the statutory definition of the crime. 
When, therefore, jurors have been left the option of relying upon a legally
inadequate theory, there is no reason to think that their own intelligence and
expertise will save them from that error.   

 

Griffin, 502 U.S. at 59, 112 S. Ct. at 474[1]
(emphasis added); cf. Hutch v. State, 922 S.W.2d 166, 172 (Tex. Crim.
App. 1996) (presumption that jury understood and followed court’s charge made
erroneous instruction in application paragraph was important factor supporting
conclusion that caused egregious harm).[2] 
Here, the charge presented two alternate grounds, under either of which the
jury could find Robinson guilty of capital murder.  One of these grounds was
legally adequate and the other was legally defective.  Accordingly, we hold
that the charge contains legal error.

Standard for Reversal

Robinson did not preserve error by
objecting to the erroneous submission and concedes that we must apply the
egregious harm standard to determine whether the error requires reversal.[3] 
See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  Almanza
held that jury charge error is egregiously harmful if it affects the very basis
of the case, deprives the defendant of a valuable right, or vitally affects a
defensive theory.  Id.  In examining the record to determine whether the
charge error is egregious, we consider the entirety of the charge, the evidence
(including the contested issues and weight of the probative evidence), the
arguments of counsel, and any other relevant information revealed by the record
of the trial.  Id.; see Allen v. State, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); Sanchez v. State, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).


          Jury charge as a whole

The charge submits disjunctive
theories of capital murder.  It informed the jury of the elements of capital
murder under either of the two theories, and later instructed the jury to find
the defendant guilty of capital murder if it found those elements beyond a
reasonable doubt.  As explained above, only one of the two theories constitutes
capital murder in Texas.  Nothing in the charge could have alerted the jury to
a problem with the instruction because the error was consistent throughout.  

The copy of the charge returned by
the jury with the signed verdict contains handwritten interlineations as
follows:

Before you
would be warranted in finding the defendant guilty of capital murder, you must
find from the evidence beyond a reasonable doubt that on the occasion
in question the defendant . . . intentionally employed Robert Mason to
kill Jimmy Sims; . . . or you must find from the evidence beyond a
reasonable doubt that on the occasion in question the defendant . . . entered
into an agreement with Robert Mason to commit the felony offense
of aggravated assault of Jimmy Sims . . . and pursuant to that agreement
they did carry out their conspiracy and while in the course of committing said
conspiracy, Robert Mason intentionally caused the death of Jimmy Sims . . . .

(emphasis in the original).  These
interlineations show a focus on the different elements of capital murder under
the murder for hire theory and the elements of the constitutionally defective
alternative theory offered in the court’s charge.  The record thus supports the
presumption that the jury understood and followed the charge.  See Hutch v.
State, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996).  Accordingly, this
consideration favors reversal.

Evidentiary record

Neither Robinson nor Mason testified
at trial.  The State sought to prove its case through statements that Mason
made to his former friends, Javier Martinez and Gregory Fuentes, and his former
girlfriend, Kim Martinez.[4]

Javier Martinez, who drove the
getaway car, testified that he drove Mason to a meeting with Robinson several
days before the murder, after which Mason told him that Robinson gave Mason a
.45-caliber gun as partial payment for agreeing to beat Sims.  Javier Martinez
recounted that he agreed to drive Mason to Sims’ house based on his
understanding that Mason would beat Sims, not kill him.[5] 


On the day of the murder, Javier
Martinez drove Mason to Sims’ house.  From his position on a nearby street, he
heard the gunfire.  Javier Martinez recalled that Mason had a gun when he left
the car, but could not confirm whether it was the same weapon Mason received
from Robinson.  The State proved that Sims died from bullets shot from a .45-caliber
gun.  

Gregory Fuentes testified that Mason
told him before the incident that he had agreed to beat Sims.  Fuentes went
with Mason to Robinson’s home several days after the murder and heard Mason
tell Robinson that he had shot and killed Sims.  According to Fuentes, Robinson
acted frustrated and surprised when Mason said that he had shot and killed
Sims.  After that exchange, Fuentes saw Robinson give Mason some money. 
Fuentes testified that Mason never told him that Robinson gave him a gun. 
Mason did, however, ask Fuentes to help Mason get rid of the murder weapon. 
Fuentes put Mason in contact with a worker at his uncle’s shop who destroyed
the gun with a blow torch, and then Mason threw the pieces into the Ship
Channel.  

In contrast, Kim Martinez testified
that Mason told her Robinson paid him to kill Sims.  Kim recalled that Mason
did not tell her about the payment until the day after the murder.  On
cross-examination, Kim admitted that she did not mention that Mason had
received payment from Robinson in her initial statement to the police
detectives.  

Our review of the record leads us to
conclude that a rational juror could have found Robinson guilty beyond a
reasonable doubt of capital murder based on either the valid theory or the
invalid theory.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789;
Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005).  Because it
is as likely that the jury relied on the valid theory as the invalid theory to
find Robinson guilty, and it is impossible to tell which, this factor also
favors reversal. 

Arguments of counsel

In its opening argument, the State
declared that the jury would hear that Mason got into Robinson’s car where “a
deal was reached” that Mason would do a “beatdown,” and that Mason was the triggerman,
but never explicitly mentioned that the State would have to prove that Mason
received payment from Robinson.  

During the State’s closing argument,
the prosecutor mistakenly told the jurors that the charge contained the “for
hire” element in the second alternative ground for capital murder:

There are
essentially two ways for you to find someone, this Defendant, guilty of capital
murder.  What this says right here is: You can find that he intentionally or
knowingly hired Robert Mason with remuneration or the promise of it to kill
Jimmy Sims.  Or, you can find that there was a conspiracy between the two of
them to commit aggravated assault, he hired Bob Mason to commit aggravated
assault, the murder was in furtherance of that aggravated assault, and he
should have anticipated it.

And, quite
honestly, six of you could think one, six the other, or several of you could
think I’m not sure which, but I am sure beyond a reasonable doubt that it’s one
of these two.  Okay?  And if I have done that, what this charge tells you is
that the Defendant gets convicted of capital murder. . . .

Later, the prosecutor told the jury
that it could convict Robinson of capital murder if the State has “proved to
you beyond a reasonable doubt that either [Robinson] hired Robert Mason to
commit murder or he hired Robert Mason and there was a conspiracy to commit
aggravated assault and that the murder was committed in furtherance of that
conspiracy and he should have anticipated it.”  In short, the prosecutor twice
misstated that the alternative ground for finding Robinson guilty of capital
murder as if it contained the omitted element.  These misstatements could have
served only to confuse the jury about the elements required under the capital
murder submission.  And, the prosecutor told the jury that they could reach
agreement if each juror chose only one of the two theories. 

In closing, the State focused on
rebutting the defense argument that the State’s evidence, if believed, proved
only assault or aggravated assault, and marshaled the evidence that could
support a finding of capital murder under the first alternative.  Contrary to
its position on appeal, however, the State did not rely on the first
alternative to the exclusion of the second.  The State continued to sanction the
possibility that the jury could find Robinson guilty under the second
alternative, arguing that Robinson should have anticipated that Mason would
kill Sims after giving Mason “a gun as payment to go do a beatdown.” 
Consequently, this factor also favors reversal.

Conclusion

The charge instructed the jury to
find Robinson guilty of capital murder if it found either that Robinson engaged
in conduct that amounted to capital murder as alleged in the indictment and
described in the capital murder statute, or in other conduct that does not
constitute capital murder under the statute.  It is uncontested that the second
instruction is not legally supportable, and it is impossible to tell from the record
which ground for conviction the jury selected.  Having conducted an Almanza
harm analysis, we hold that appellant was egregiously harmed by the error in
the jury charge.  We therefore reverse the judgment and remand the case to the
trial court for a new trial.

 

Jane Bland

                                                          Justice

 

Panel consists of Justices Taft, Jennings and Bland.

Publish.  See Tex. R. App. P. 47.2(b). 

 

 

 









[1]
The Court contrasted this result to situations
in which the jury enters a general verdict of guilt on a question submitting
various grounds in the disjunctive in the absence of legally sufficient
evidence on some, but not all, of those grounds, which generally do not require
reversal.  See Griffin v. United States, 502 U.S. 46, 59, 112 S.
Ct. 466, 474 (1991) (“Quite the opposite is true, however, when they have been
left the option of relying upon a factually inadequate theory, since jurors are
well equipped to analyze the evidence.”).

 





[2]
As a consequence of allowing the jury to find
Robinson guilty of capital murder based on conduct that did not amount to
capital murder, the charge error authorized the jury to assess punishment at
confinement for life, as opposed to somewhere in the range of five to
ninety-nine years. Compare Tex
Penal Code Ann. § 12.32(a) (Vernon 2003) (providing that individual
adjudged guilty of first-degree felony subject to sentence of imprisonment of
not more than 99 years or less than 5 years) with Tex Penal Code Ann. § 12.31(a)
(Vernon 2003) (hist. note) (providing that, at time Robinson committed offense,
individual adjudged guilty of capital felony subject to sentence of life
imprisonment or death).

 





[3]
Because of this concession, we do not reach the
question of whether our finding of charge error should result in automatic
reversal without determining whether egregious harm exists as required by Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).  See Green
v. State, 233 S.W.3d 72, 80 n.7 (Tex. App.—Houston [14th Dist.] 2007, pet.
ref’d) (acknowledging that federal courts would automatically reverse on
finding that charge submitted valid and invalid theories, but nevertheless
undertaking Almanza analysis).  





[4]
Kim Martinez is not related to Javier Martinez.

 





[5]
According to Javier Martinez, the fact that
Mason was carrying a gun was not exceptional; he testified that Mason carried a
gun “between 70 to 80 percent of the time.”