# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2668

_____

United States of America,

*Plaintiff - Appellee,*

v.

Charles Daniel Koss,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: June 13, 2014
Filed: August 25, 2014

_____

Before MURPHY, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Charles Daniel Koss of two counts of theft of government money, one count of Social Security disability fraud, one count of passing a false financial instrument with intent to defraud, and one count of mail fraud. Koss appeals, arguing that the evidence was insufficient to prove that he had the requisite *mens rea*

for the offenses, and that the district court[1] erred in giving two jury instructions. He also challenges the sentence imposed by the district court. We affirm.

I.

Koss applied for Social Security disability benefits in 1987 and was approved. As a recipient of benefits, Koss was required to report improvements in his medical condition and any return to work activity. Koss was apprised of these requirements when he first applied for disability benefits, and he later acknowledged several times his obligation to be truthful in his reports. Nonetheless, Koss failed to report work activity and earnings from Embassy Mortgage, a business that he started in 1994 or 1995, as well as work activity in other ventures.

In 2010, after the Social Security Administration (the "SSA") began investigating him, Koss admitted that he knew that he was required to report his work activity and had intended to do it numerous times. He explained, however, that he had decided against reporting, in part because he feared that if he lost his eligibility for benefits, he would no longer qualify for Medicare. Several witnesses at trial testified to Koss's significant role at Embassy Mortgage and said that they had been surprised to learn that he was receiving disability benefits while he worked there.

The SSA ultimately concluded that because of his work activity, Koss had ceased to qualify for benefits in 1995. The agency notified Koss in May 2010 that he had received $212,768.60 in improper benefits.

Koss mailed the agency a document entitled "Registered Private Money Order," purporting to pay the SSA $212,737.60 from an account in the United States Treasury

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

held in Koss's name. The purported money order contained Koss's date of birth and social security number. Koss had no such account in the United States Treasury. Federal officials interviewed Koss, and he acknowledged that he created the instrument on a friend's computer and mailed it to the SSA. Koss refused to identify his friend and admitted that while he thought it was "okay" for him to create and send the instrument, it would be detrimental to the country as a whole if a large number of citizens did so.

Despite Koss's admission that he had created the purported money order, federal officials attempted to obtain handwriting samples from him to confirm that he had signed it. Koss initially obliged and provided five or six samples, but refused to provide any more, claiming that his hand hurt. The officials obtained a grand jury subpoena ordering Koss to provide a full set of samples, but he did not honor the subpoena. Several court orders were issued ordering Koss to provide the samples, but he did not relent, and the district court ultimately held him in civil contempt.

A government witness testified at trial to this series of events, and the government asked the court to take judicial notice of three exhibits: an order finding that Koss had failed to provide fingerprints and handwriting exemplars to the grand jury, an order requiring Koss to provide handwriting samples, and an order finding that Koss had not shown just cause for his failure to comply with one of the previous orders and holding him in civil contempt. Koss did not object, and the court took judicial notice of the exhibits.

After the close of evidence at trial, the court issued two jury instructions relating to Koss's refusal to provide the exemplars. Jury Instruction 8 read:

> I have decided to accept as proved the fact that the defendant refused to comply with court orders compelling him to provide handwriting samples. Those orders are identified as Government Exhibits 80, 81, and 109. You may therefore treat these facts as proved.

As with any fact, however, the final decision whether or not to accept it is for you to make and you are not required to agree with me.

R. Doc. 112, at 12.  Jury Instruction 21 read:

You have heard evidence that the defendant . . . refused to obey orders of this Court to provide handwriting specimens for the purpose of comparison with the handwriting obtained on certain documents and records.

The law provides that an order to furnish handwriting samples or exemplars is a lawful order. . . . The conduct of the defendant in refusing to furnish those handwriting specimens, if you find beyond a reasonable doubt that he did so refuse, is not alone sufficient to establish his guilt because innocent persons sometimes decline to give evidence to authorities even when ordered to do so.  However, such conduct, including all related events, is a circumstance from which you may, if you choose, reasonably draw the inference and find, in light of the surrounding circumstances, that the defendant . . . believed that the comparison of his handwriting with the signatures on the documents obtained by the Government would be unfavorable to him and favorable to the prosecution.

The law does not require you to draw such an inference.  You are the sole judges of the facts.  Bear in mind that the law never imposes upon any defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

R. Doc. 112, at 30.  Koss objected to both instructions on the ground that they were "prejudicial."  The district court overruled both objections.

After deliberating, the jury found Koss guilty of all five counts against him: two counts of theft of government money—one relating to Koss's unlawfully obtaining Social Security disability benefits and one relating to a $250 payment he

received pursuant to the American Recovery and Reinvestment Act of 2009 based on his status as a Social Security beneficiary (Counts 1 and 2); one count of Social Security disability fraud (Count 3); one count of passing a false financial instrument with intent to defraud (Count 4); and one count of mail fraud (Count 5).

The district court sentenced Koss to 84 months' imprisonment for Counts 1, 4, and 5; 12 months' imprisonment for Count 2; and 60 months' imprisonment for Count 3, all to be served concurrently. Koss did not object to the presentence report, which calculated Koss's advisory guideline range as 63 to 78 months' imprisonment. PSR ¶ 108.[2] After considering the sentencing factors in 18 U.S.C. § 3553(a), the court varied upward to the 84-month total term of imprisonment.

## II.

Koss first challenges the sufficiency of the evidence supporting his convictions. He argues that the government failed to prove that he possessed the requisite *mens rea* under the statutes of conviction. We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the jury's verdict and making all reasonable inferences in support of the verdict. *United States v. Yielding*, 657 F.3d 688, 715 (8th Cir. 2011). We will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

Koss contends, with respect to Counts 1 and 3, that the government failed to prove that he intended unlawfully to obtain Social Security benefits. Regarding theft of government money in Count 1, "[u]nder 18 U.S.C. § 641, the government must establish beyond a reasonable doubt that [Koss] intended to deprive the United States of its property." *United States v. McCorkle*, 688 F.3d 518, 521 & n.3 (8th Cir. 2012).

---

[2]The district court apparently misspoke at the sentencing hearing when it stated that the advisory range was 63 to 72 months' imprisonment. S. Tr. 8.

As for Social Security disability fraud in Count 3, the government must prove that Koss (1) knew of an event affecting his right to receive or to continue to receive benefits, (2) knowingly concealed or failed to disclose the event to the SSA, and (3) did so with the intent fraudulently to secure payment of Social Security disability benefits in an amount greater than he was due. *United States v. Phythian*, 529 F.3d 807, 812 (8th Cir. 2008); *see* 42 U.S.C. § 408(a)(4). The jury had ample evidence from which it could infer that Koss intended to obtain Social Security disability benefits to which he was not entitled. For example, Koss admitted to federal officials that he was afraid of losing his Medicare if he no longer qualified for disability benefits. Koss also acknowledged a number of times his obligation to be truthful in his reports to the SSA and his awareness that the information he provided would affect his eligibility for benefits.

Koss next argues, with respect to the theft-of-government-money charge in Count 2, that there was insufficient evidence for the jury to conclude that he knew of or intended to obtain the $250 payment he received in 2009 based on his status as a recipient of disability benefits. There was no direct evidence that Koss was aware of the $250 payment, but the $250 payment appeared in Koss's bank records, and we think the jury reasonably could infer that he knew of transactions in his bank account, particularly given that the payment was deposited into the same account into which his ill-gotten disability benefits were paid. This fair inference of Koss's knowledge, combined with the other evidence at trial regarding his intent to defraud the government and unlawfully obtain disability benefits, suffices to support the jury's verdict.

Finally, Koss challenges his convictions under Counts 4 and 5 relating to his sending the fictitious money order purportedly to repay the SSA for the benefits he should not have received. Both charges—passing a fictitious financial instrument and mail fraud—require proof of intent to defraud. *See* 18 U.S.C. §§ 514(a), 1341. Koss argues that he "believed he had the right to [use the money order], and he did not

-6-

believe he did anything wrong by creating [it], presenting it or mailing it at the time he did it." But the jury reasonably could infer otherwise. The jury heard testimony regarding characteristics of the fictitious instrument that made it appear valid, and Koss's refusal to identify the friend who helped to create the money order supported an inference that he was protecting a confederate in what he knew to be fraudulent conduct.

## III.

Koss next argues that the district court erred in issuing Jury Instructions 8 and 21. He contends that Jury Instruction 8 improperly expressed to the jury that the court had "decided to accept as proved the fact that the defendant refused to comply with court orders compelling him to provide handwriting samples." "We review the district court's jury instructions for abuse of discretion and will affirm if the instructions, taken as a whole, fairly and adequately submitted the issues to the jury." *United States v. Engelmann*, 720 F.3d 1005, 1011 (8th Cir. 2013) (internal quotation omitted).

Jury Instruction 8 related to judicial notice. Much of its text, including the portion to which Koss objects, was taken from Eighth Circuit Model Criminal Jury Instruction 2.04. Koss does not contend that it was inappropriate for the court to take judicial notice of the court orders relating to his refusal to provide handwriting samples, or of his refusal to comply with those orders. Assuming that judicial notice was proper, Jury Instruction 8 accurately explained to the jury that the court had decided to accept those facts as proved but that the jury, as the finder of fact, was not required to agree. Even if taking judicial notice of Koss's refusal was improper, any error was harmless. Just after it asked the court to take judicial notice of the court orders, the government elicited testimony from a Treasury official explaining the orders and the circumstances of Koss's lack of cooperation, so the judicial notice was cumulative of undisputed testimony.

-7-

Jury Instruction 21 explained to the jury that it could, but was not required to, infer from Koss's refusal to comply with the court orders that he "believed that the comparison of his handwriting with the signatures on the documents obtained by the Government would be unfavorable to him and favorable to the prosecution." Koss argues that this instruction "was unnecessary and gave an incorrect impression to the jury . . . that Koss's failure to complete the remaining 14 exemplars [out of 20] somehow prejudiced and interfered with the government's investigation and prosecution of him, when it did not." We see no merit to this argument. It is well established that the jury may be instructed of its authority to draw an adverse inference from a criminal defendant's refusal to provide handwriting exemplars. *See, e.g., United States v. Brazel*, 102 F.3d 1120, 1152-53 (11th Cir. 1997). Jury Instruction 21 is virtually identical to the instruction, set forth in *United States v. Lentz*, 419 F. Supp. 2d 837, 842 n.11 (E.D. Va. 2006), that Koss suggests would have been appropriate. That Koss provided some, but not all, of the samples required of him does not render the instruction or the related inference inappropriate.

IV.

Koss challenges the sentence imposed by the district court on several grounds. He argues that the district court erred in calculating his advisory guideline range both by imposing an adjustment for obstruction of justice under USSG § 3C1.1 and in the way it calculated the loss from his offenses under USSG § 2B1.1(b)(1). Because Koss did not object in the district court to these alleged procedural errors, we review for plain error. *United States v. Townsend*, 618 F.3d 915, 918 (8th Cir. 2010). Koss also argues that the district court erred in varying upward from the advisory guideline range; we review the substantive reasonableness of the district court's sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007).

Koss argues that the obstruction-of-justice enhancement under USSG § 3C1.1 is inapplicable because he never denied writing or signing any of the relevant

documents in the case, but merely refused to provide what he believed were unnecessary handwriting exemplars. The presentence report, however, demonstrates that the application of the enhancement was not based solely on Koss's initial refusal to abide by the government's request. The court also relied on Koss's refusal to comply with court orders and on his filing several documents purporting to designate government attorneys and district judges as his fiduciaries, in what the district court reasonably could infer was an attempt to influence these officials. We perceive no plain error in the district court's application of the enhancement on that basis. Through his behavior, Koss "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." USSG § 3C1.1.

Koss next argues that the district court plainly erred in calculating the loss from his offenses under USSG § 2B1.1(b)(1). Because Koss's offense level was "determined largely on the basis of the total amount of harm or loss" and his "offense behavior [was] ongoing or continuous in nature," his offenses were grouped for the purpose of calculating his advisory guideline sentence. *Id.* § 3D1.2(d). The court calculated the relevant offense characteristic by adding together the approximately $212,000 Koss unlawfully obtained from the SSA and the approximately $212,000 Koss fraudulently attempted to transfer from the Treasury via the fictitious money order, resulting in an intended loss of over $400,000 under USSG § 2B1.1(b)(1)(H).

Koss argues that the tallying of the amounts was impermissible "double counting" of the original sum, because even if the government had honored the fictitious money order, the government would simply have transferred money from one department to another. We find no plain error in the district court's approach. The court was not calculating restitution that Koss owed, but rather was determining the seriousness of the two distinct harms that Koss inflicted on the government. Koss defrauded the SSA of over $200,000. He separately created and attempted to pass a fictitious money order to withdraw over $200,000 from the United States Treasury.

The government arguably was injured in distinctly different ways by the two offenses. Given the absence of authority on this point, the district court did not obviously err in treating the intended losses separately for the purpose of determining Koss's specific offense characteristic under the guidelines.

Finally, Koss challenges the substantive reasonableness of his eighty-four-month sentence because the upward variance "was imposed for the same reasons adjustments for obstruction of justice and sophisticated means were imposed." A district court abuses its discretion when it gives significant weight to an improper or irrelevant factor or commits a clear error in judgment in weighing the proper factors. *United States v. Gonzalez*, 742 F.3d 815, 817 (8th Cir. 2014). Koss appears to suggest that the court should not have varied upward based on factors enumerated in 18 U.S.C. § 3553(a) that overlapped with considerations addressed by the guidelines. After *United States v. Booker*, 543 U.S. 220 (2005), and *Gall v. United States*, 552 U.S. 38 (2007), however, a district court is permitted to give greater weight to a particular factor than the Sentencing Commission recommends. The advisory guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice," but the district court may vary from the guidelines based on its view that a case falls outside the "heartland" to which the guidelines are addressed, or that the advisory range "fails properly to reflect [the] § 3553(a) considerations" in a particular case. *Rita v. United States*, 551 U.S. 338, 350-51 (2007); *see also Gall*, 552 U.S. at 49-50 & n.6.

Insofar as Koss argues that the district court clearly erred in balancing the relevant factors, we see no abuse of discretion. The court reasonably applied the § 3553(a) factors, including the seriousness of the offenses, Koss's lack of respect for the law, and the need for both general and specific deterrence.

*        *        *

The judgment of the district court is affirmed. We deny Koss's motions to supplement the record, based on the general rule that the appellate record is limited to the record made in the district court, and on Koss's failure to show why any medical test results relevant to his defense could not have been developed and presented in the district court. *See Von Kahl v. United States*, 242 F.3d 783, 788 (8th Cir. 2001).

_____