# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1300

_____

United States of America,

*Plaintiff - Appellee,*

v.

Jordan James Davis,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: February 16, 2018
Filed: August 28, 2018

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

_____

COLLOTON, Circuit Judge.

A jury convicted Jordan Davis of five counts of aiding and abetting mail fraud, and one count of conspiracy to commit theft from a program receiving federal funds.

_____

[*]This opinion is filed by Chief Judge Smith and Judge Colloton under Eighth Circuit Rule 47E.

On appeal, Davis argues that the district court[1] erred by not submitting a copy of the indictment to the jury and by improperly instructing the jury. He also contends that the evidence at trial was insufficient to support his convictions. We reject these contentions and affirm the judgment.

I.

Community Action of Minneapolis, a federally funded, non-profit organization, ran programs and services for low-income residents of Minneapolis. To provide employment for low-income, disadvantaged high school students, and to expose the students to a university atmosphere, the non-profit operated a Ben & Jerry's ice cream store on the campus of the University of Minnesota. The store was never profitable and regularly required funding from the non-profit until the store eventually closed in 2011.

The chief executive officer of the non-profit entity was William Davis, Jordan Davis's father. William designated his son to manage the store in November 2001, and Jordan Davis ran the store's daily operations from 2001 to 2006 as its full-time manager. At all times, Davis reported directly to his father.

In October 2006, Davis accepted a full-time position with the Minneapolis Police Department. Other employees assumed Davis's daily responsibilities at the store. Davis intermittently provided assistance to the store for a time; for example, he purchased supplies if the store ran low and spoke by telephone with an employee who called for help. Although Davis remained "on-call," by 2010 he did little to no work for the store. He testified that he could not recall taking any specific action during 2010 to support the store.

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

Despite Davis's withdrawal from the business, William approved paying Davis through the end of 2010 in the same amount that he received as a full-time store manager. Davis's income continued on some occasions even when the store was closed and no other employees were paid. For example, William instructed the non-profit's staff to pay Davis even when no other employees were paid during the store's closure for the holidays in late 2008 to early 2009. When Davis stopped receiving a regular paycheck at the end of 2010, William directed that Davis receive a $6,000 "bonus" check. All told, the non-profit paid Davis $149,880 from November 2006 through December 2010 while Davis also worked full time with the local police department.

A grand jury charged Davis and William with several offenses arising from these events. William pleaded guilty; Davis proceeded to trial. The indictment charged Davis with five counts of aiding and abetting mail fraud, in violation of 18 U.S.C. § 1341 and § 2, and one count of conspiracy to commit theft from a program receiving federal funds, in violation of 18 U.S.C. § 371. The jury found Davis guilty on all six counts. The district court sentenced him to twenty-four months' imprisonment.

II.

Davis's first point on appeal is that the district court erred by denying his request to provide the jury with a copy of the indictment unadorned by a limiting instruction. Davis asked the court to provide the indictment, but then withdrew the request after the court explained a limiting instruction that would accompany the indictment. The indictment stated that Davis had participated in a "no-show job." The court said that if the jury received the indictment, then the court would instruct the jury that even if *some* money paid to Davis was legitimately for services that he provided, the government still wins its case if other money paid to Davis was the

-3-

proceeds of fraud. Davis asserts that the court's proposed instruction essentially "threatened a directed verdict."

We see no abuse of discretion in how the district court handled Davis's request to submit the indictment. "Submission of the indictment to the jury is a matter within the sound discretion of the trial court provided the jury is properly admonished that the indictment does not constitute evidence of any kind." *United States v. Wagoner*, 713 F.2d 1371, 1377 (8th Cir. 1983). The district court here was appropriately concerned that the indictment, without a limiting instruction, would mislead the jury about the government's burden of proof. The thrust of the suggested instruction was to inform the jury, correctly, that Davis was not innocent under the law just because he performed some amount of work for the store. Under the governing law, the government was not required to prove that Davis was entitled to zero compensation. As the district court put it, "[t]he fact that he showed up at five community events and scooped ice cream doesn't mean that there wasn't" fraud committed. The court's refusal to submit the indictment without a limiting instruction was not an abuse of discretion. The district court never arrived at final wording of a limiting instruction, and Davis could have objected to the particulars of that instruction if it were flawed.

Second, Davis argues that the district court erred in denying his proposed "good character" instruction. Davis's proposed instruction stated, in relevant part, that each juror was "permitted to conclude that the government has not proved the charges against Mr. Davis beyond a reasonable doubt solely on the basis of evidence of Mr. Davis's good character, or in combination with other evidence presented."

This circuit has disapproved a jury instruction saying that a defendant's good character, standing alone, is enough in itself to warrant acquittal. *United States v. Krapp*, 815 F.2d 1183, 1187 (8th Cir. 1987). A "good character" instruction is unnecessary, moreover, when other jury instructions permit the jury to consider character evidence. *Id.* at 1188. The district court here instructed the jury to "give

-4-

all evidence the weight and value you believe it is entitled to receive," and to consider "all the facts and circumstances in evidence which may aid in a determination of the defendant's knowledge or intent." Davis was able to argue that he was an "honest hard worker" and "a truthful person who[m] you could take at his word." The district court did not abuse its discretion by refusing the proposed instruction.

Third, Davis contends that the district court improperly gave a willful blindness instruction. The instruction provided, in part, that "[k]nowledge may be inferred if the defendant deliberately closed his eyes to what would otherwise have been obvious to him." This type of instruction is proper if the evidence "support[s] the inference that the defendant was aware of a high probability of the existence of the fact in question *and* purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." *United States v. Aleman*, 548 F.3d 1158, 1166 (8th Cir. 2008) (alteration in original) (quoting *United States v. Barnhart*, 979 F.2d 647, 652 (8th Cir. 1992)). Stated differently, the instruction is appropriate where the evidence supports an inference of "deliberate ignorance"—that is, where the defendant was presented with facts that placed him on notice that criminal activity was particularly likely, yet intentionally failed to investigate. *United States v. Lundstrom*, 880 F.3d 423, 442 (8th Cir. 2018). In evaluating the propriety of the instruction, we consider whether the evidence—viewed in the light most favorable to the prosecution—could support the inference of willful blindness. *United States v. Hiland*, 909 F.2d 1114, 1131 (8th Cir. 1990).

The government here was required to prove, among other things, that Davis knew the purpose of the charged conspiracy was to commit theft concerning programs receiving federal funds. Davis's defense was that he did not know about his father's scheme to defraud the non-profit entity. Davis argues that the willful blindness instruction was improper because the evidence implied that he could have had either *actual* knowledge or *no* knowledge of the fraud, but not willful blindness. *See United States v. Whitehill*, 532 F.3d 746, 751 (8th Cir. 2008).

At trial, however, Davis objected to the instruction on a different ground. He argued that a willful blindness instruction is appropriate only in "a failure-to-act case," and maintained that it was not appropriate here because the government alleged affirmative acts of fraud by Davis. Davis has abandoned this theory on appeal and raises a new objection instead. We thus review the new claim for plain error. *United States v. Oakie*, 12 F.3d 1436, 1442 (8th Cir. 1993). To obtain relief, Davis must show an obvious error that caused prejudice and seriously affected the fairness, integrity, or public reputation of the proceedings. *United States v. Olano*, 507 U.S. 725, 732 (1993).

The government does not explain clearly in its brief on appeal what it believes that Davis intentionally failed to investigate in order to remain blind to the criminal activity. Perhaps the point is that Davis, while he was performing little work for the ice cream store, should have inquired of his father about the justification for continuing substantial payments to him. That basis for the instruction is not obviously insufficient. But even if this was not the classic case for a willful blindness instruction, Davis has not established prejudice from any error. There was abundant evidence that Davis had actual knowledge of fraud, and the jury rejected his testimony that he was unaware of it. If Davis is correct that a willful blindness theory was not supported by the evidence, then it is unlikely that the jury relied on it. Jurors are well equipped to analyze the evidence, and they presumably adopted a factually adequate ground for conviction. *See Griffin v. United States*, 502 U.S. 46, 59-60 (1991). There was no plain error warranting relief.

III.

Davis next contends the evidence is insufficient to support his convictions. We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the verdict and making all reasonable inferences in favor of the verdict. *United States v. Koss*, 769 F.3d 558, 562 (8th Cir. 2014). We will reverse only if no

reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

The mail fraud charges required the government to prove, in part, that Davis knowingly aided and abetted a scheme to defraud with the intent to defraud. *See United States v. Louper-Morris*, 672 F.3d 539, 555 (8th Cir. 2012); *United States v. Pennington*, 168 F.3d 1060, 1064 (8th Cir. 1999). Davis argues that there was no scheme to defraud the non-profit entity. And if there was a scheme, he says that he did not know about it.

There was sufficient evidence from which a reasonable jury could infer that Davis had knowledge that William engaged in a scheme to defraud. Davis knew that William controlled employment at the non-profit, and that he approved the continuation of Davis's manager-level paychecks after Davis began full-time employment elsewhere. Davis also knew that he was performing minimal work, and that other employees had assumed his previous responsibilities. And Davis knew that he alone was paid during the holiday closure in 2008 while other employees were not. Davis was aware that William authorized a $6,000 bonus for Davis when he left the payroll, even though the store continued to lose money. There was sufficient evidence to support an inference that Davis knew of a scheme to defraud.

Davis also complains that there was insufficient evidence of intent to defraud. Intent, of course, may be proved by circumstantial evidence, and "[t]he scheme itself often serves as evidence of a defendant's intent to defraud." *United States v. Whitehead*, 176 F.3d 1030, 1038 (8th Cir. 1999). Davis cashed more than 100 paychecks from 2006 to 2010, despite knowing that he was performing minimal work and that other employees had undertaken his former duties. While Davis testified he believed the paychecks were legitimate because he was "on-call," the jury was free to disbelieve Davis's denials in light of the amount of pay and work actually performed.

-7-

Davis argues that because neither he nor his father attempted to conceal the paychecks, the jury could not reasonably infer that he had the requisite intent. Efforts at concealment might provide evidence of conscious wrongdoing, *see United States v. Nelson*, 988 F.2d 798, 803 (8th Cir. 1993), but lack of concealment does not necessarily establish innocence. William was a powerful figure at the non-profit entity, and there was evidence that staff was afraid to challenge him. The jury reasonably could have found that the Davises were brazen but guilty, and that they declined to hide their activity because there was no effective oversight. *See United States v. Addison*, 708 F.3d 1181, 1190 (10th Cir. 2013). There was sufficient evidence to support a finding that Davis had the requisite intent to defraud.

Davis also asserts that there was insufficient evidence to prove that he conspired to commit theft from a federally funded program. The government was required to prove that there was an agreement to commit theft, that Davis voluntarily and intentionally joined the agreement, that Davis knew the purpose of the agreement, and that a conspirator knowingly did an overt act. Final Jury Instruction 15; *see generally United States v. Bassett*, 762 F.3d 681, 685 (8th Cir. 2014). There was sufficient evidence to prove these elements. A conspiratorial agreement may be tacit, and it may be proved by circumstantial evidence. A reasonable jury could have found that Davis had knowledge of his father's scheme, and that he voluntarily and intentionally joined a conspiracy with William by receiving and cashing paychecks that he did not earn.

\*　　\*　　\*

The judgment of the district court is affirmed.

_____

-8-